**RYDER TRUCK RENTAL, INC., Plaintiff,**

v.

**ACTON FOODSERVICES CORP., Beltran Corp., Defendants.**

**No. CV 82–5066 CHH.**

United States District Court, C.D. California.

Jan. 6, 1983.

Coskey, Coskey & Boxer, Los Angeles, Cal., for plaintiff.

Mitchell, Silberberg & Knupp, Richard R. Mainland, Gerard A. Corsini, Lawrence Kenswil, Los Angeles, Cal., for defendant Beltran Corp.

## MEMORANDUM OPINION

CYNTHIA HOLCOMB HALL, District Judge.

This action was brought to recover accrued rental fees and cancellation charges pursuant to the alleged breach of a truck lease and service agreement. Plaintiff Ryder Truck Rental, Inc. ("Ryder") acquired a lease and service agreement from Avis Leasing Corporation on May 1, 1982 that had been entered into with defendant Acton Foodservices Corporation ("Acton"). Plaintiff alleges damages in the amount of $34,116.41 for rentals accruing between July 12, 1982 and October 5, 1982, and $805,946 for cancellation charges resulting from the breach of the lease and service agreement. The second named defendant, Beltran Corporation ("Beltran"), is the "grandparent" of Acton by virtue of its ownership of 100 percent of the stock of Acton Company, Inc., which in turn owns 100 percent of the stock in Acton Foodservices Corporation. As the parties are of diverse citizenship, this Court has subject matter jurisdiction, 28 U.S.C. § 1332.

This matter came before the Court on the motions of defendants Acton and Beltran to dismiss the case. Acton moved to dismiss, or alternatively to stay, these proceedings because plaintiff had previously filed a lawsuit against it concerning the breach of the same contract in Superior Court for Los Angeles County.[1] Beltran based its motion to dismiss on lack of personal jurisdiction, arguing that it cannot be considered the "alter ego" of Acton in this transaction. After reviewing the points and authorities submitted by the parties and considering the oral arguments of counsel, I dismissed the case on November 22, 1982, with respect to both defendants. The basis for this decision is set forth below.

## I. PERSONAL JURISDICTION OVER BELTRAN

Beltran Corporation was organized under the laws of the State of Delaware, and has its principal place of business in Massachusetts. Plaintiff contends that this Court should exercise personal jurisdiction over Beltran solely on the theory that it is the "alter ego" of Acton, as evidenced by the facts that it indirectly owns all of the outstanding shares of stock in Acton, that a substantial number of officers and directors of Acton are also officers and directors of Beltran, and that the Board of Directors of Acton is designated by Beltran. From this, plaintiff asserts that Acton's business activities are carried on for the benefit of Beltran without sufficient separation of the identities of the two corporate entities.

---

1. *Ryder Truck Rental Inc. v. Acton Foodservices Corp.*, No. C 417,827, filed July 14, 1982, in Superior Court of the State of California for the County of Los Angeles.

In order to survive Beltran's motion to dismiss, plaintiff must make a *prima facie* showing of facts to support the exercise of personal jurisdiction. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285–86 (9th Cir.1977). The allegations and evidence submitted by Ryder do not satisfy this test. So long as the separation between parent and subsidiary corporations is real, even if merely formal, the use of the subsidiary to conduct business in California does not automatically subject the parent to suit in this state. *Williams v. Canon, Inc.*, 432 F.Supp. 376 (C.D.Cal.1977). Sole ownership of the subsidiary by the parent is not enough; in addition, there must be "clear evidence that the parent in fact controls the activities of the subsidiary." *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir.1980). *See also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406 (9th Cir.1977); *O.S.C. Corp. v. Toshiba America, Inc.*, 491 F.2d 1064 (9th Cir.1974). In this case, there is no indication that Acton is undercapitalized, that corporate formalities are not maintained, or that the subsidiary is held out as an agent of the parent. *See* 2 J. Moore, *Moore's Federal Practice* ¶ 4.25[6] (2d ed. 1982). As plaintiff has not satisfied its burden of alleging facts sufficient to support its "alter ego" theory, Beltran's motion to dismiss for lack of personal jurisdiction is granted.

## II. FEDERAL COURT ABSTENTION

A more complex question is raised by Acton in its motion to dismiss, or in the alternative to stay, by reason of parallel judicial proceedings currently pending in the California state courts. On July 14, 1982, prior to the commencement of this action in federal court, plaintiff filed a lawsuit in the Superior Court for the County of Los Angeles against Acton for breach of the same lease and service agreement at issue in the instant case. The Superior Court complaint states four common counts for money damages in the sum of $179,-146.86, plus interest, for rental payments accruing between May 1 and July 12, 1982. Upon filing its state court action on July 14, 1982, plaintiff made an ex parte application for a writ of attachment, which was denied by the Superior Court. Plaintiff renewed its request for attachment by noticed motion, which was denied after hearing by the Superior Court on September 7, 1982. After filing a motion for reconsideration on September 24 (which was heard and denied by the Superior Court on October 12), plaintiff opened a second front in the federal courts on September 29th. Plaintiff again sought a writ of attachment, the hearing on which was continued pending the decision on this motion to dismiss or stay.

The federal court complaint arises from the same lease and service agreement at issue in the state court proceedings. The federal action differs only in the measure of damages sought: plaintiff seeks damages for rental payments that accrued after its state court action was filed, and in addition seeks damages arising out of the cancellation clause included in the lease agreement.[2] The underlying contract, as well as the circumstances of the alleged breach, are identical in both causes of action. Likewise, the named parties in both lawsuits are identical.[3] A decision in either the state or federal case would be *res judicata* in the other; thus, which court makes a final decision on the merits of the dispute between the parties depends upon the fortuities of case loads and trial scheduling in the state and federal courts for this district.

---

**2.** Plaintiff alleges that it terminated the lease agreement on July 16, 1982—two days after it filed its lawsuit in Superior Court. The cancellation charges of $805,946 arise from the defendant's alleged default in making rental payments.

**3.** The state court action names fictitious Doe defendants in addition to Acton. Under Local Rule 4(i) of the Central District of California, however, Doe defendants cannot be named in the federal complaint. This superficial difference does not alter the conclusion that the parties to the state and federal lawsuits are identical. Should plaintiff identify additional defendants in the Superior Court lawsuit through the "Doe" mechanism, it could also join those individuals as defendants in the federal action under Federal Rule of Civil Procedure 21.

■ At oral argument, plaintiff's counsel conceded that he could readily file a supplemental pleading in the pending Superior Court action to recover the same measure of damages sought in federal court. Moreover, plaintiff did not contend that he would suffer undue delay or other hardships by proceeding in state court. Instead, plaintiff asserted only a right to bring a separate cause of action in this Court on diversity grounds, in effect arguing that it has a virtually absolute right to invoke the diversity jurisdiction of the federal courts notwithstanding parallel litigation pending in the state courts.[4] Defendants, on the other hand, urge this Court to abstain from asserting jurisdiction over this case. Abstention may be appropriate when duplicative litigation in the state courts creates a risk of tension between state and federal courts, see *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 663–64, 98 S.Ct. 2552, 2557–2558, 57 L.Ed.2d 504 (1978), or where exercising federal jurisdiction would result in uneconomical or vexatious litigation, see *Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942). Although the decision of whether abstention is proper is largely committed to the discretion of the district court, *Will, supra,* 437 U.S. at 664, 98 S.Ct. at 2558; *Knaefler v. Mack,* 680 F.2d 671 (9th Cir. 1982), the exercise of that discretion is justi-

fied only when exceptional circumstances are present. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 819, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976) ("Only the clearest of justifications will warrant dismissal."). In *Colorado River, supra,* 424 U.S. at 817–18, 96 S.Ct. at 1246, the Supreme Court articulated four factors to be considered by a district court in exercising its discretion. Two of these factors—"the order in which jurisdiction was obtained by the concurrent forums" and the "desirability of avoiding piecemeal litigation," *Id.* at 818–19, 96 S.Ct. at 1246–1247—weigh in favor of a stay or dismissal of the federal court action in this case.[5]

■ In considering the first factor, I note that this federal suit was not filed until after the state court action was underway. As federal court jurisdiction is founded upon diversity of citizenship, 28 U.S.C. § 1332, plaintiff faced an election between state and federal forums when it commenced the state court litigation. Having elected state court, plaintiff should be bound by its choice absent compelling reasons to seek relief in another forum.[6] Because this is a "repetitive" rather than a "reactive" lawsuit,[7] the fact that state court jurisdiction was invoked first weighs heavi-

---

**4.** See *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964); *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) (dictum).

**5.** *Colorado River* also sets forth two additional factors to be considered by the district court in exercising its discretion: (1) control over property that is the subject of the action, and (2) the inconvenience of the federal forum. In the instant case, these factors are not applicable.

**6.** These policy considerations are reflected in the restrictions placed upon the right to remove a diversity case from state to federal court. Note, *Federal Court Stays and Dismissals in Deference to Parallel State Court Proceedings: The Impact of Colorado River,* 44 U.Chi.L.Rev. 641, 666–67 (1977). The right to remove an action is expressly limited to the parties named as defendants in the state suit, 28 U.S.C. § 1441(a) (1976). Between 1875 and 1887, the right to remove a state court case was granted to both plaintiffs and defendants. Act of 1875,

18 Stat. 470, 28 U.S.C.A. § 71 note. In 1887, the plaintiff's right to remove was sharply curtailed, reflecting a legislative judgment that "it is believed to be just and proper to require the plaintiff to abide his selection of a forum." H.Rep. No. 1078, 49th Cong., 1st Sess. 1 (1887); *quoted in Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 106 n. 2, 61 S.Ct. 868, 871 n. 2, 85 L.Ed. 1214.

**7.** A "repetitive" lawsuit, such as this one, is a parallel action brought by the same plaintiff in a second forum. A "reactive" suit, by contrast, is one brought in a federal forum by the state court defendant, thus reversing the roles of the parties to the litigation. Because dismissal of a "repetitive" suit merely binds the plaintiff to its initial choice of forum, a strong case for federal abstention is presented. *See Burrows v. Sebastian,* 448 F.Supp. 51 (N.D.Ill.1978); Note, *Federal Court Stays, supra,* 44 U.Chi.L.Rev. at 666–71.

ly towards justifying a stay or dismissal of the parallel federal action.[8]

A second factor counselling for abstention is the desirability of avoiding piecemeal litigation. *Colorado River, supra,* 424 U.S. at 818, 96 S.Ct. at 1246. In this case, the state court has already denied plaintiff's application for an attachment order and denied a motion for reconsideration of that decision. Exercising federal jurisdiction in this case would not only require duplication of time and effort on the part of the litigants and the Court, but would also create the possibility of inconsistent results. Because abstention will avoid the risk of piecemeal litigation, it is appropriate at this early stage in the federal court proceedings. Furthermore, the instant case does not present any special facts indicating that the exercise of federal court jurisdiction is appropriate notwithstanding the factors discussed above. *Compare Tovar v. Billmeyer,* 609 F.2d 1291 (9th Cir.1980) (dismissal of civil rights action brought under 42 U.S.C. § 1983 an abuse of discretion by district court); *but see Miller v. Carr,* 535 F.Supp. 682 (W.D.Wash.1982).

The final issue is whether this Court should stay the proceedings pending adjudication of the Superior Court lawsuit or dismiss the action altogether. In this case, the state proceedings were initiated eleven weeks before the federal complaint was filed; the defendant has already been served; and the state court has conducted hearings and ruled on the availability of provisional remedies. Furthermore, plain-

tiff does not contend that the Superior Court is unable to provide fair, adequate, or timely relief. In light of these facts, and because adjudication of the parallel state court proceedings will settle the issues presented in this action, I have dismissed this case without prejudice.

---

8. Both the state and federal courts have developed numerous methods avoiding the inefficiency, costs, and possibility of inconsistent judgments that may occur when multiple suits are filed which raise similar issues between the same parties. If two similar cases are before different state courts, the latter may be abated by an order of the court hearing the first action. *See, e.g., Lord v. Garland,* 27 Cal.2d 840, 168 P.2d 5 (1946). When similar cases are brought in the federal district courts, they may be consolidated pursuant to Fed.R.Civ.P. 42(a). Alternatively, a district court may transfer a case to another district where a similar case is pending, 28 U.S.C. § 1404(a); enjoin proceedings before another district court, *Del Mar Avionics v. Quinton Instruments Co.,* 645 F.2d 832 (9th Cir.1981); or stay or dismiss the proceedings pending adjudication in the other district, *Pacesetter Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93 (9th Cir.1982). When similar actions are brought in state and federal courts, however, considerations of comity and federalism generally preclude one court from compelling the second to abdicate jurisdiction. *See Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) (state court may not enjoin *in personam* federal court proceedings); 28 U.S.C. § 2283 (1976) (prohibiting federal courts from enjoining state court proceedings except under narrowly drawn circumstances). In light of these restrictions, federal court abstention is the only available method of achieving the goals of judicial economy and consistency when the action duplicates a pending state court proceeding.