NCR CREDIT CORPORATION,
Plaintiff,

v.

UNDERGROUND CAMERA,
INC., Defendant,

v.

NCR CORPORATION, Third-Party
Defendant,

and

Hancock Bank and Trust Company,
Trustee.

Civ. A. No. 83–2153–C.

United States District Court,
D. Massachusetts.

March 6, 1984.

William F. Macauley, Michael C. Gilleran, Craig & Macauley, A. Van C. Lanckton, Boston, Mass., for plaintiff.

Philip T. Corwin, Boston, Mass., for NCR Corp.

John J. O'Connor, Roche, Carens & De-Giacomo, Boston, Mass., for trustee Hancock Bank and Trust Co.

Alan R. Hoffman, Lynch, Brewer, Hoffman & Sands, Boston, Mass., Robert G. Watson, Framingham, Mass., Thomas K. Christo, North Hampton, N.H., for Underground Camera, Inc.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought by NCR Credit Corporation ("NCR Credit") against Underground Camera, Inc. ("Underground") to recover money allegedly due and unpaid on a computer sales contract. NCR Credit is a wholly-owned subsidiary of NCR Corporation ("NCR"), the third-party defendant in this action. NCR Credit is a Delaware corporation, Underground is a Massachusetts corporation and NCR is a Maryland corporation. This Court has jurisdiction under 28 U.S.C. § 1332. The case is before the Court on plaintiff's motion to dismiss counterclaims, third-party defendant's motion to stay third party action and compel arbitration, and third-party defendant's motion for a special order regarding trial publicity.

Examination of the pleadings in this case reveals the following facts. During 1978 and 1979, Underground and NCR engaged in detailed discussions regarding computers and their potential use in Underground's business. Underground was seeking to purchase a total computer system which would replace existing cash registers at its retail stores, keep track of sales, and monitor inventory at its central warehouse. Negotiations between Underground and NCR personnel led to a November 16, 1979, contract by which NCR agreed to provide Underground with an entire computer system and all technical work necessary to install and implement the system, including software. NCR later amended the contract to specify in greater detail the requirements of the computer system it was to provide. Between February 1981 and March 1983, Underground and NCR entered into 44 "purchase supplements," or additional contracts evidencing additional sales made under the terms and conditions of the parties' original contract.

In October 1979, NCR offered Underground "complete financing capability," elaborating that such financing programs were available "directly through NCR." Underground selected the "NCR Financing Program" as the means of acquiring the NCR computer system. Underground alleges that it was not informed until early 1981 that an NCR subsidiary—NCR Credit—would handle the time payment financ-

ing of the computer system. NCR assigned all of its contracts with Underground to NCR Credit. In a supplement to the sales contract, Underground acknowledged the assignment to NCR Credit and waived any defenses it might have against the assignee, NCR Credit. Similar acknowledgments and waivers were contained in each "purchase supplement" executed by the parties.

Underground alleges that its dealings with NCR remained substantially the same after the assignment to NCR Credit. Underground claims that it continued to deal almost exclusively with NCR representatives with regard to the new computer system, even with respect to financing arrangements. Further, the majority of correspondence between NCR Credit and Underground was on NCR corporate letterhead, from NCR corporate offices, and prepared by NCR corporate employees.

NCR commenced delivering its computer system to Underground in the fall of 1980. Underground alleges that within the first few months it became aware that the NCR computer system, as provided, was insufficient to meet its needs. Communications ensued between NCR and Underground aimed at curing various operational defects. In late April 1983, Underground's attorney notified NCR that Underground would cease paying for the computer system until the defects were cured. On July 25, 1983, NCR Credit instituted this action against Underground, seeking payment in full of the unpaid purchase price under the contract (plus interest), treble damages under M.G.L. c. 93A, and trustee process. Underground responded on September 16, 1983, by bringing counterclaims against NCR Credit and a third-party complaint against NCR. Underground claims that the actions of NCR and its wholly-owned subsidiary, NCR Credit, constitute fraudulent inducement and conspiracy to defraud, deceptive trade practices, negligence and breach of contract. Underground seeks damages for excess expenses and lost profits, trebled, plus attorneys' fees, interest and costs.

## Motion to Dismiss Counterclaims

Plaintiff moves this Court to dismiss defendant's counterclaim for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). As to Count I, plaintiff argues that Underground has failed to state a claim against NCR Credit for fraudulent inducement or conspiracy to defraud because it has not alleged with regard to fraudulent inducement any fraudulent acts by NCR Credit, and because it has not alleged with regard to conspiracy to defraud any agreement or concerted activity between NCR Credit and the other alleged conspirator, NCR. As to Counts II, III, and IV, plaintiff argues that Underground has not alleged that NCR has committed any acts which establish any liability of NCR Credit.

■ The Court will first examine Underground's conspiracy claim. Underground alleges in Count I that "NCR and NCR Credit ... conspired to defraud Underground Camera to its great harm and detriment." In the twenty or so pages defendant has devoted to Count I, this is the only statement containing a direct reference to the existence of a conspiracy. Defendant, however, cannot satisfy the pleading requirements by merely reciting that a conspiracy has taken place. *Heart Disease Research Foundation v. General Motors Corp.*, 463 F.2d 98, 100 (2d Cir.1972); *Bass v. Boston Five Cent Savings Bank*, 478 F.Supp. 741, 745 (D.Mass.1979). Rather, the claim must be pleaded with reasonable certainty and definiteness so as to inform the opposing party of the nature of the conspiracy charged. *Picking v. State Finance Corp.*, 332 F.Supp. 1399 (D.Md.), *aff'd* 450 F.2d 881 (4th Cir.1971), *cert. denied* 405 U.S. 931, 92 S.Ct. 987, 30 L.Ed.2d 806 (1972).

Given the secretive nature of conspiracies, parties are often unable to plead facts directly showing the existence of a conspiracy. The elements of a conspiracy therefore may be, and often must be, proved by circumstantial evidence. *See, e.g., Industrial Building Material, Inc. v. Inter-*

*chemical Corp.*, 437 F.2d 1336, 1343 (9th Cir.1970). Here, defendant claims that it has pleaded circumstantial evidence of concerted action between NCR and NCR Credit. Underground points to its allegations of the "intermingling of personnel, etc." with respect to the financing program. I rule that these allegations are insufficient to support defendant's conspiracy claim. A conspiracy is, simply stated, an agreement to commit an illegal act. *See, e.g., Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir. 1983). The illegal act of which Underground complains in Count I is the misrepresentation of NCR products and services. The defendant's allegations regarding the financing program do not circumstantially prove any of the essential elements of such a conspiracy to defraud. Count I therefore should be dismissed to the extent that it alleges a conspiracy.

Underground also alleges in Count I that NCR Credit's actions constituted fraudulent inducement. NCR Credit challenges the sufficiency of this claim on the same grounds that it challenges Counts II, III and IV: Underground has not alleged that NCR Credit itself has committed any acts for which it could be held liable. Underground offers almost forty pages of exhaustively detailed allegations in support of its claims; however, all of the actions and events described in defendant's answer involve NCR, not NCR Credit. Nevertheless, Underground contends that these factual allegations are sufficient to support its counterclaims against NCR Credit. It argues that NCR Credit is a "sham subsidiary," that NCR and NCR Credit are one and the same, and, consequently, that NCR and NCR Credit should be held jointly and severally liable for each other's actions. In other words, the defendant requests that this Court disregard the fiction of corporate separateness.

▮ The corporate disregard doctrine is normally used "to pierce the corporate veil and hold shareholders, including parent corporations of wholly-owned subsidiaries, liable for the torts of the corporation." *Cawley v. Bloch*, 544 F.Supp. 133, 136

(D.Md.1982). The doctrine is equitable in nature and should be applied on a case-by-case basis. *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 422 (5th Cir.1980). Under certain circumstances, then, it would be reasonable for a court to apply the doctrine to a party's attempt to hold a subsidiary liable for the acts of a parent corporation. *FMC Finance Corp. v. Murphree*, 632 F.2d at 422–24; *Cawley v. Bloch*, 544 F.Supp. at 136. *Accord Kingston Dry Dock Co. v. Lake Champlain Transport Co.*, 31 F.2d 265, 267 (2d Cir. 1929) (Judge Learned Hand stated that "[p]erhaps it would be too much to say that a subsidiary can never be liable for a transaction done in the name of the parent . . . . Any person may use another as a screen, and one may conceive cases where such an arrangement might exist.")

▮ Under Massachusetts law, a party requesting a court to disregard the corporate form must establish the existence of two conditions. First, the party must allege facts suggesting that representatives of one corporation exercise some type of pervasive control over the activities of another corporation; or that there is a "confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities . . . ." *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 618–19, 233 N.E.2d 748 (1968). Second, the party must show that piercing of the corporate veil is necessary to defeat fraud or wrong or to prevent gross inequity. *Id.* at 620, 233 N.E.2d 748. Only in those rare situations in which these two conditions exist may a court properly invoke the equitable doctrine of corporate disregard.

▮ Turning to the present case, the Court notes that defendant alleges facts that suggest a "confused intermingling" of NCR and NCR Credit activities. The Court need not rule on the issue, however, because the defendant has not shown that gross inequity would result should the Court respect the corporate separateness of NCR and NCR Credit. There is no

evidence that NCR used NCR Credit as an instrument to perpetrate a fraud. NCR Credit was presented to Underground as the NCR subsidiary that would finance the computer sales contract. The evidence shows that NCR Credit's actions, though limited, have been consistent with that role. On the other hand, NCR was the corporation whose representatives negotiated the sales contract, whose computer system was purchased and installed, and whose personnel serviced the system. Since Underground's claims in this case center on its dissatisfaction with NCR's computer system, and not with the financing program, NCR is the proper party for Underground to sue. Underground has, in its third-party complaint, sufficiently and exhaustively stated four claims against NCR. It will have the opportunity to prove these claims at trial, and, if it is successful, Underground can be adequately compensated for any injuries it has suffered. There is no evidence indicating that Underground will be unduly prejudiced should the Court refuse to pierce the corporate veil. Therefore I rule that this case is not an appropriate one in which to apply the equitable doctrine of corporate disregard and that defendant's remaining counterclaims, therefore, should be dismissed.

### Motion to Stay Third-Party Action and Compel Arbitration

■ The record shows that the sales contract entered into by Underground and NCR on November 16, 1979, contained an arbitration clause. The clause states, in pertinent part:

> Any controversy or claim, including any claim of misrepresentation, arising out of or related to this Agreement and/or any contract hereafter entered into between NCR and Customer, or the breach thereof, or the furnishing of any equipment or service by NCR to Customer, shall be settled by arbitration.

On October 6, 1983, in accordance with this arbitration provision, NCR made a demand for the arbitration of Underground's third-party claims. NCR now requests that this Court stay the third-party action and compel arbitration. Defendant argues, however, that NCR Credit waived NCR's right to arbitration when it brought this action in federal court.

This court has declined, however, to treat NCR and NCR Credit as the same entity. I rule therefore that NCR Credit did not waive NCR's right to arbitrate when it filed suit in federal court. I rule further that NCR has made a timely demand for arbitration. Consequently, the third-party action should be stayed pending arbitration.

Because the outcome of the arbitration may dispose of some or all of the claims outstanding between Underground and NCR Credit, I rule that proceedings in this Court between Underground and NCR Credit should also be stayed pending the outcome of the arbitration. This result is entirely consistent with the strong federal policy favoring arbitration of contractual disputes. *See, e.g.,* 9 U.S.C. § 1 *et seq.; United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–1353, 4 L.Ed.2d 1409 (1960).

### Motion Regarding Trial Publicity

■ NCR asks this Court to enter a special order regarding trial publicity. Specifically, NCR requests that the Court order the parties and their officers, directors, managing agents and attorneys not to make any extrajudicial statements in connection with this action which would be prohibited by Rule 35 of the Local Rules of this Court if made by a lawyer or law firm associated with this action. In support of its motion, NCR submits a copy of an article published in the October 10, 1983, issue of *Computerworld,* the "newsweekly for the computer community." The article contains a three paragraph description of the case before this Court. NCR alleges that the statements in the article do not flow from a fair reading of the papers on file in this Court.

The Court rules that NCR has failed to demonstrate a need for the requested order

**614**

regarding publicity. Local Rule 35 prohibits extrajudicial statements in civil cases when such statements are reasonably likely to interfere with a fair trial. The Court has considered the three paragraph description of the pending case contained in *Computerworld* and concludes that that article alone is unlikely to interfere with any litigant's right to a fair trial. Moreover, neither NCR nor the newspaper article itself suggests that any individual affiliated with this case contributed in any manner to the writing of the *Computerworld* article. Rather, the article appears to be no more than a journalist's interpretation of the public records on file in this case. The Court, therefore, rules that NCR's motion for an order regarding trial publicity should be denied.

Order accordingly.