**OMNI–WAVE ELECTRONICS CORPORATION,**

v.

**MARSHALL INDUSTRIES and Hyundai Electronics America.**

**Civ. A. No. 87–2717–WD.**

United States District Court, D. Massachusetts.

Oct. 6, 1989.

---

Richard M. Zielinski, Hill & Barlow, Kenneth R. Berman, Sherin and Lodgen, Boston, Mass., for plaintiff.

Mark N.G. Hichar, Rudolph F. Pierce, Goulston & Storrs, Laura L. Carroll, Jerome Gotkin, James L. Messenger, Kenneth R. Berman, Widett, Slater & Goldman, Boston, Mass., for defendants.

MEMORANDUM AND ORDER ON
PLAINTIFF'S FIRST MOTION TO
AMEND COMPLAINT (# 32)

ROBERT B. COLLINGS, United
States Magistrate.

The plaintiff, Omni–Wave Electronics
Corporation (hereinafter "Omni–Wave"),
has filed a motion to amend its complaint in
four respects. (# 32) The first of these
proposed amendments seeks leave to add
another defendant, Hyundai Electronics In-
dustries Co., Ltd. (hereinafter, "HEI").
Both of the original defendants, Marshall
Industries (hereinafter "Marshall") and
Hyundai Electronics America (hereinafter
"HEA"), oppose the proposed amendments
and have filed memoranda in opposition.
(# # 38, 39) Omni–Wave was granted leave
to file a reply memorandum (# 41) in re-
sponse to which HEA submitted a sur-re-
ply. (# 44) After oral argument, the issues
raised by the plaintiff's motion to amend
are ripe for resolution.

The claims against the two defendants
are somewhat distinct as are the proposed
amendments to the claims against each.
Accordingly, the proposed amendments to
the claims against each defendant will be
considered separately.

## HEA AND HEI

1. *HEI as the alter ego or agent of HEA*

The facts with respect to the relationship
between Omni–Wave, HEA and HEI are
that Omni–Wave contracted with HEA to
assemble certain electronic devices called
DRAMS using Omni–Wave's component
parts. Approximately 70,000 were assem-
bled; Omni–Wave alleges that 40,000 were
assembled in a defective manner.

The actual assembly work was not done
by HEA; rather, HEA sent the component
parts to Korea to have them assembled
there by another corporation, HEI. After
assembling the component parts, HEI
shipped the completed DRAMS back to the
United States for delivery.

Omni–Wave seeks to add HEI as an addi-
tional defendant in this litigation under an
alter ego or agency theory. Defendant
HEA opposes this amendment on the

grounds of futility, arguing that the addi-
tional allegations fail to state a claim upon
which relief can be granted. The law is
clear that it lies within the sound discretion
of the Court to deny a motion to amend
when the proposed claim lacks legal merit
and, consequently, would be subject to dis-
missal under Rule 12(b)(6), Fed.R.Civ.P.
*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct.
227, 230, 9 L.Ed.2d 222 (1962); *Demars v.
General Dynamics Corporation*, 779 F.2d
95, 99 (1 Cir., 1985); *Liberty Leather Cor-
poration v. Callum*, 653 F.2d 694, 700 (1
Cir., 1981).

Since Omni–Wave is seeking to have
the Court apply the corporate disregard
doctrine vis-a-vis HEA and HEI, it is in-
cumbent upon the plaintiff to allege the
existence of the essential elements or pre-
requisite conditions of the doctrine in its
amended complaint. The two-part test for
the alter ego doctrine is as follows:

Under Massachusetts law, a party re-
questing a court to disregard the corpo-
rate form must establish the existence of
two conditions. First, the party must
allege facts suggesting that representa-
tives of one corporation exercise some
type of pervasive control over the activi-
ties of another corporation; or that there
is a "confused intermingling of activity
of two or more corporations engaged in a
common enterprise with substantial dis-
regard of the separate nature of the cor-
porate entities ..." *My Bread Baking
Co. v. Cumberland Farms, Inc.*, 353
Mass. 614, 618–619, 233 N.E.2d 748
(1968). Second, the party must show
that piercing of the corporate veil is nec-
essary to defeat fraud or wrong or to
prevent gross inequity. *Id.* at 620, 233
N.E.2d 748. Only in those rare occasions
in which these two conditions exist may a
court properly invoke the equitable doc-
trine of corporate disregard.

*NCR Credit Corporation v. Underground
Camera, Inc.*, 581 F.Supp. 609, 612
(D.Mass., 1984).

In the *NCR Credit* case, Underground
sought to bring counterclaims against NCR
Credit as the alter ego of NCR Corpora-

tion. The Court concluded that Underground, while alleging facts indicative of a "confused intermingling" of the businesses of NCR Credit and NCR Corporation, failed to demonstrate that it would be grossly inequitable or unduly prejudicial if the corporate veil were not pierced. *Id.* Finding the application of the corporate disregard doctrine inappropriate in the circumstances of the case, the Court dismissed Underground's counterclaim against NCR Credit. *Id.* at 613.

Turning to the substantive allegations in the plaintiff's proposed first amendment in the instant case in which the plaintiff attempts to allege the corporate disregard doctrine, Omni–Wave seeks to add the following underlined words to paragraph 4 of its complaint:

> The defendant Hyundai America is a foreign corporation with a usual place of business at 70 Walnut Street, Wellesley, Massachusetts. The defendant HEI is, upon information and belief, a Korean corporation which does business in the United States through its wholly owned subsidiary Hyundai America. Hyundai is in the trade or business of manufacturing, supplying, and assembling electronic parts, and is a merchant with respect to assembled semiconductor devices. HEI is an agent or alter ego of Hyundai America, and Hyundai America is an agent or alter ego of HEI, in that, among other things, HEI shares responsibility with Hyundai America in performing assembly services under contracts for such services that Hyundai America has with American customers (including the contract at issue in this case), and Hyundai America on behalf of itself and HEI enters into contracts with American customers (including the contract at issue in this case) to provide assembly services that Hyundai America performs in shared responsibility with HEI. For many internal purposes and from all outward appearances in the American market Hyundai America and HEI are the same company.

Plaintiff's First Motion to Amend (# 32) at pp. A1–1 to A1–2. As is evident on their face, these allegations are inadequate to establish the requirements of an alter ego theory.

While the plaintiff's proposed amendment sets forth some facts with respect to a "confused intermingling of activity" as between HEA and HEI, the Court need not rule on the sufficiency of these pleadings in meeting the first condition of the corporate disregard doctrine because the plaintiff alleges no facts whatsoever that demonstrate the need to pierce the corporate veil in order to avoid fraud or gross inequity. For example, there are no facts pleaded that would indicate that HEA is a sham or shell corporation. Nor is there any evidence from which it could reasonably be inferred that HEA is without assets or funds to satisfy a judgment against it. In short, Omni–Wave has pleaded no facts which would demonstrate "some fraudulent or injurious *consequence* of the intercorporate relationship" between HEA and HEI. *My Bread Baking Co. v. Cumberland Farms*, 353 Mass. 614, 618–619, 233 N.E.2d 748, 752 (1968).

Omni–Wave cannot rely on the stark legal conclusion that "HEI is an agent or alter ego of Hyundai America, and Hyundai America is an agent or alter ego of HEI." It has been held that:

> In the absence of any alleged factual basis, neither a conclusory allegation of this sort (that the individual defendants conspired with each other) nor a bland assertion that defendants are "alter egos" or "joint venturers" is sufficient to withstand a motion to dismiss.

*MCT Shipping Corporation v. Hormoz Sabet*, 497 F.Supp. 1078, 1088 (S.D.N.Y., 1980).

The same point is made in two other cases. In *Ryder Truck Rental v. Acton Foodservices Corp.*, 554 F.Supp. 277, 279 (C.D.Cal., 1983), the Court noted that the plaintiff had "…not satisfied its burden of alleging facts sufficient to support its 'alter ego' theory…." *Id.* In the case of *Hokama v. E.F. Hutton & Co., Inc.,* 566 F.Supp. 636, 647 (C.D.Cal., 1983), the Court wrote:

> The term "alter ego" refers to a doctrine of corporate law under which courts may

at times disregard corporate entities. (citation omitted) If plaintiffs wish to pursue such a theory of liability, they must allege the elements of the doctrine. Conclusory allegations of alter ego status such as those made in the present complaint are not sufficient. *Cf. MTC Shipping v. Sabet,* 497 F.Supp. 1078, 1088 (S.D.N.Y.1980).

*Id.*

Moreover, it does not matter that all allegations of the complaint are presumptively true for purposes of a motion to dismiss; legal conclusions or conclusory allegations do not benefit from this presumption of truthfulness. 2A *Moore's Federal Practice* 12.07 (2.–5) (2d ed.1986).

To summarize, there is simply no pleading of facts in Amendment One upon which to base a finding that corporate disregard is necessary to defeat the effects of a fraud or wrong or to prevent gross inequity in this case. Omni–Wave has failed to allege the essential facts underlying the second element of the corporate disregard doctrine.

█ While it is somewhat unclear from the papers submitted, it appears that Omni–Wave may be advocating a separate grounds for liability based on agency theory, *i.e.,* "HEA and HEI were each other's reciprocal agents." Plaintiff's Reply Memorandum, Etc. (# 45) at p. 3. However, as a fair reading of the cases demonstrates, there is no such independent basis for liability in this context. Under Massachusetts law, Omni–Wave's alter ego and agency theories are one in the same.

In the oft-cited decision of *My Bread Baking Co. v. Cumberland Farms, Inc., supra,* the Massachusetts Supreme Judicial Court stated that:

The circumstances in which one corporation, or a person controlling it, may become liable for the acts or torts of an affiliate or a subsidiary under common control have been frequently discussed. Although common ownership of stock of two or more corporations together with common management, standing alone, will not give rise to liability on the part of the corporation or its employees, addi-

tional facts may be such as to permit the conclusion that an agency or similar relationship exists between the entities.

*Id.,* 353 Mass. at 618–619, 233 N.E.2d at 751–752 (footnote omitted).

The circumstances or "additional facts" necessary to demonstrate "an agency or similar relationship" are:

... (a) when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or (b) when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.

*Id.,* 353 Mass. at 619, 233 N.E.2d at 752.

Applying this "corporate disregard" criteria to the facts of the case, the Court determined that the jury was justified in finding that:

... Haseotes in all matters connected with the *My Bread* arrangement was acting for C.F. Inc. and that the satellite companies in following Haseote's orders concerning the bread racks were caused to act by C.F. Inc. and were acting as its agents.

*Id.,* 353 Mass. at 621, 233 N.E.2d at 753 (citation omitted).

In short, *My Bread* teaches that in order to hold one corporation liable for the actions of another corporation under an agency theory, the prerequisites of the corporate disregard doctrine must be pleaded and proven.

Other cases have interpreted this seminal case in a similar manner, discussing the alter ego and agency theories simultaneously and interchangeably. A few examples will suffice. In *Bump v. Robbins,* 24 Mass.App. 296, 314, 509 N.E.2d 12, 24 (1987), one corporation "was liable on agen-

cy principles" for the conduct of another corporation under the principles set forth in *My Bread.* Applying the corporate disregard doctrine enunciated in *My Bread,* the First Circuit in the case of *Miller v. Honda Motor Co., Ltd.,* 779 F.2d 769, 772 (1 Cir., 1985), was unable to "find that American Honda is, in fact, an agent of its Japanese parent." *Id.* Judge Young of this Court reached the same result in a recent decision. Addressing the sufficiency of the allegation that the defendant corporation was "the *alter ego* and agent of the individual defendants," Judge Young applied the *My Bread* criteria to determine if the plaintiff had stated a cause of action in the case of *Hoffman v. Optima Systems, Inc.,* 683 F.Supp. 865 (D.Mass., 1988), and wrote that to pierce the corporation veil, ". . . Hoffman must show that piercing the corporate veil is necessary to defeat fraud or wrong or to prevent gross inequity." Judge Young found that Hoffman had failed to do so.

In sum, to the extent the plaintiff is contending that HEA and HEI are liable for each other's actions on an agency theory as distinct from an alter ego theory, the Court finds that argument to be contrary to the principles enunciated in established precedent and, as such, is without merit. In other words, the plaintiff's agency theory is, at bottom, the same as its corporate disregard theory.

Accordingly, I shall not permit the plaintiff to amend the complaint to add HEI as a defendant under an alter ego or agency theory and the motion to amend, to the extent that it seeks to do so, will be denied.

### 2. *Warranty and Chapter 93A claims against HEA and HEI*

The Court's conclusion that HEI cannot be liable on an alter ego or agency theory affects the manner in which Amendments Two and Four must be addressed. These amendments deal with warranty and Chapter 93A claims which Omni–Wave seeks to bring ostensibly against both HEA and HEI.

Throughout the original complaint, HEA alone was referred to as "Hyundai." In the proposed amendments, HEA and HEI are collectively referred to as "Hyundai," thereby making it impossible to differentiate which facts and actions relate to which particular corporate entity. However, having reviewed the various memoranda as well as the oral arguments made by counsel, the Court finds that this litigation will best be advanced by rulings on the legal viability of the plaintiff's proposed claims. In other words, while Omni–Wave's motion to amend with respect to Amendments Two and Four will be denied, the denial will be without prejudice to filing newly-drafted amendments to the complaint to the extent that the Court finds a basis in law for the amendments.

For example, in the fourth proposed amendment, the plaintiff seeks to add new allegations to its M.G.L. ch. 93A claim detailing additional unfair or deceptive acts or practices of "Hyundai." The defendant HEA objects to the proposed amendments on the grounds of futility, arguing that the plaintiff has failed to allege that the wrongful conduct occurred primarily and substantially within Massachusetts. However, M.G.L. ch. 93A § 11 specifically provides that "the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth." Evidence of this affirmative defense is not "apparent from the face of the complaint." 2A *Moore's Federal Practice* § 12.07 [2.–5] (1989) Rather, it is a question of fact upon which the defendant bears the burden of proof and, as such, is not susceptible to dismissal under Rule 12(b)(6), Fed. R.Civ.P. Thus, HEA's objection is without merit, and I shall not deny the plaintiff the opportunity to bring a Chapter 93A claim against HEI. For purposes of the motion to amend, it is not material that HEI may ultimately succeed in proving that the alleged wrongful conduct did not occur primarily and substantially in Massachusetts.

While the proposed allegations purportedly support an independent cause of action under Chapter 93A against HEI, given the "Hyundai" designation, the Court cannot determine which of the unfair acts

and practices are attributable to HEA and which are alleged to have been committed by HEI. It is therefore impossible to weigh the sufficiency of the allegations vis-a-vis the two "Hyundai" corporations separately. For this reason, the motion to amend to add a claim under Chapter 93A against HEI as set forth in proposed amendment four will be denied. This denial will be without prejudice since, during oral argument, plaintiff's counsel asserted that HEI had, in fact, made false representations to Omni–Wave in Massachusetts. Plaintiff may file an amended complaint containing a claim under Chapter 93A against HEI provided that the complaint makes it clear what unfair acts and practices are alleged to have been committed by HEI as distinguished from HEA. In other words, the plaintiff must delineate the factual basis for holding HEA and HEI independently liable under Chapter 93A.

Prior to discussing Omni–Wave's proposed second amendment relating to the addition of warranty claims against "Hyundai", the effect of plaintiff's use of the collective designation "Hyundai" on the original claims of contract and tort in Count IV must be examined. The sole issue raised at this juncture is whether Omni–Wave has stated claims against HEI.

It does not appear that Omni–Wave is claiming that HEI is independently liable on a contract theory. Put another way, the plaintiff only alleges that HEI is liable on the contract having been bound as a reciprocal agent or alter ego of HEA. Plaintiff's Reply Memorandum, Etc., # 34 at p. 2. For the reasons previously stated with respect to Amendment One, plaintiff has no cause of action in contract against HEI based on the corporate disregard doctrine. I shall not allow the plaintiff to include a contract claim against HEI in an amended complaint.

■ The second and more difficult question is whether the plaintiff has stated a separate tort claim against HEI. Omni–Wave delivered component parts to HEA to be assembled into DRAMS, labor for which HEA was to be compensated. In turn, HEA delivered the component parts to HEI, the entity which performed the actual assembly. There appears to be no dispute that on the facts of this case there was a bailment at least as between Omni–Wave and HEA. Defendant Hyundai Electronics America's Memorandum of Law, Etc., # 38 at pp. 15–16; Plaintiff's Reply Memorandum, Etc., # 45 at p. 3.

A bailment has been defined as:

> ... the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, on the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. (footnotes omitted).

8 *Am.Jur.2d*, Bailments § 2 at p. 738 (1980); *See Also*, 8 *Corpus Juris Secundum*, Bailments § 2 at p. 224 (1988); *Williston On Contracts*, Chapter 35 § 1030 at pp. 875–876 (3rd Edition 1967).

Since both parties, Omni–Wave and HEA, were to benefit from the transaction, it would be characterized as a bailment for mutual benefit. 8 *Corpus Juris Secundum*, Bailments § 16 at pp. 238–239. In such a bailment, the bailee is under a duty to exercise ordinary diligence and care with respect to the property bailed. 8 *Corpus Juris Secundum*, Bailments § 57 at p. 290. In other words, the bailee would be liable in tort for losses or injury to the bailed property that was proximately caused by his negligence. *Williston On Contracts*, Chapter 35 § 1034 at p. 887; *See also*, *Marantz Company Inc. v. Clarendon Industries, Inc.*, 670 F.Supp. 1068, 1072 (D.Mass.1987); *Fireman's Fund American Insurance Company v. Capt. Fowler's Marina, Inc.*, 343 F.Supp. 347, 350 (D.Mass., 1971); *Wright v. Heil Equipment Company*, 357 Mass. 74, 75, 256 N.E.2d 318, 319 (1970). Further, in these circumstances where HEA, the bailee, was to perform services, i.e., assembly, with respect to the bailed property, HEA was "obligated to use a degree of skill adequate for the due performance of [its] undertaking." 8 *Corpus Juris Secundum*, Bailments § 34 at p. 264 (footnote omitted); 8 *Am.Jur.2d*, Bailments § 134 at p. 862.

Both the bailor and the bailee have the right to sue a third party who causes injury to or the loss of the bailed property. 8 *Am.Jur.2d*, Bailments § 262 at 993; *Associates Discount Corporation v. Gillineau*, 322 Mass. 490, 492, 78 N.E.2d 192, 193 (1948). In the case of *American Auto Sales, Inc. v. Massachusetts Port Authority*, 2 Mass.App. 805, 308 N.E.2d 781 (1974), the plaintiff leased an automobile to one Wolfe who parked it in defendant's parking garage from whence it was stolen. The Court found that the defendant was under a duty of due care with respect to the plaintiff's property and that:

> Lack of a contractual relation with the defendant should not bar the plaintiff from recovering in tort where, as here, it is foreseeable that the owner of the automobile would be the principal loser in the event of theft due to negligence of the defendant during bailment. (citations omitted)

*Id.*, 2 Mass.App. 806, 308 N.E.2d at 782. By analogy, HEI in this case could be liable to Omni–Wave since the plaintiff would be "the principal loser" as a result of HEI's alleged negligence in failing to use an adequate degree of skill in assembling the DRAMS during bailment.

HEA argues alternatively that, even if there was a bailor-bailee relationship between Omni–Wave and HEI, the plaintiff's claim is futile since there can be no cause of action in negligence when only economic loss is sought and the claim is contract-based. For support of its position, HEA cites the recent Massachusetts Supreme Judicial Court decision in *Bay State–Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 533 N.E.2d 1350 (1989). The *Bay State–Spray* case involved the applicability of the tort and contract statutes of limitations in the Uniform Commercial Code. Having reviewed the *Bay State–Spray* decision, and given the context in which the Court was ruling, it is my opinion that the Court did not mean to extinguish a bailor's longstanding right to proceed either in contract or tort to recover loss or damages to bailed property, especially in the case where a third party causes injury to the bailed property and there is no privity of contract between the bailor and the third party.

Therefore, I shall allow plaintiff to amend its complaint to add allegations sufficient to state a claim in tort against HEI alleging that HEI caused damage to Omni–Wave's bailed property consistent with the foregoing analysis.

■ Returning to the second proposed amendment, the plaintiff's warranty allegations are couched in terms of the Uniform Commercial Code. Massachusetts law provides that:

> ... under M.G.L. c.106, § 2–314, a warranty of merchantability is implied in present sales of goods and in contracts for the future sale of goods, and, as a result of judicial extension of warranty liability sanctioned by the Legislature, § 2–318, a warranty of merchantability is implied in leases of goods. (citation omitted)

*Mason v. General Motors Corp.*, 397 Mass. 183, 187, 490 N.E.2d 437, 441 (1986).

The transaction at issue was neither a sale nor a lease of goods within the meaning of the Uniform Commercial Code. Rather, it was a bailment wherein title to the component parts never passed to Hyundai. Plaintiff's contention that Hyundai sold the epoxy used to bond the component parts is unavailing. The contract was clearly one for services or labor, not for the sale of epoxy. The Massachusetts Supreme Judicial Court has held that "[c]ontracts whose predominant factor, thrust or purpose is the rendition of services are not within the scope of Art. 2 (U.C.C.)." (citation omitted) *White v. Peabody Construction Co., Inc.*, 386 Mass. 121, 132, 434 N.E.2d 1015, 1021 (1982). The facts herein represent

> ... a transaction under which goods are delivered to another to be manufactured or converted in form and which would otherwise constitute a bailment is not changed in character so as to become a sale by the fact that the manufacturer is to furnish additional materials of his

own, so long as the principal materials are furnished by the other party.

8 *Am.Jur.2d*, Bailments § 35 at p. 770.

Accordingly, I shall not allow plaintiff to amend its complaint to add warranty claims arising under the Uniform Commercial Code. The U.C.C. is inapplicable to the transaction at issue and, as such, the plaintiff has no viable claim based on its provisions.

Omni–Wave argues that the proposed second amendment is not limited to U.C.C. warranties, but also contains allegations with respect to breach of express warranties in the contract. HEA does not dispute that the plaintiff has a legal right to pursue these claims against it. However, the plaintiff has no claim for breach of express contract warranties against HEI since, for the reasons stated hereinabove, Omni–Wave has no viable contract claims against HEI.

█ Finally, the plaintiff contends the second proposed amendment can be read to allege breach of common law warranties. In a bailment for mutual benefit, when the bailee is to perform labor or improvements on the bailed property, the law implies "that the article, when the work is completed, shall be reasonably fit for the purpose or use intended, in contemplation of which the parties entered on the bailment." 8 *Am.Jur.2d*, Bailments § 235 at p. 967; *Accord*, 8 *Juris Corpus Secundum*, Bailments § 34 at p. 264. This proposition of law provides a basis for a breach of common law warranty against HEA, but not against HEI. Under the law of Massachusetts,

It is true that one may sue in tort as well as in contract for a false warranty. (citation omitted) That principle does not aid the plaintiff, because there can be no breach of warranty where there is not privity of contract.

*Pearl v. William Filene's Sons Co.*, 317 Mass. 529, 531, 58 N.E.2d 825, 826 (1945); *See Also, Chestnut Hill Development Corporation v. Otis Elevator Company*, 653 F.Supp. 927, 932 (D.Mass.1987); *Marcil v. John Deere Industrial Equipment Company*, 9 Mass.App. 625, 629, 403 N.E.2d 430, 433 (1980).

Although the defense of privity has been abolished under the Uniform Commercial Code, M.G.L. c. 106, § 2–318, the plaintiff has not cited, nor has the Court found any cases that eliminate the requirement of privity as a prerequisite to recovery for breach of common law warranty.

For these reasons, plaintiff may amend its complaint to allege breach of express contract warranties and implied common law warranties against HEA but may not bring any warranty claims against HEI.

## MARSHALL INDUSTRIES, INC.

In the original complaint, Omni–Wave brought, *inter alia*, a claim against Marshall under Chapter 93A. By its third proposed amendment, Omni–Wave seeks to add additional paragraphs alleging further unfair and deceptive acts in violation of Chapter 93A against Marshall. Marshall has objected to plaintiff's proposed third amendment for the same reasons HEA objected to the proposed fourth amendment, namely that the acts or practices did not occur primarily and substantially in Massachusetts. Marshall's objection is as lacking in merit as that of HEA. The motion to amend to add the third proposed amendment will be allowed. Despite Marshall's argument to the contrary, it is not apparent from the *face of the complaint* that the actions and transactions did not occur "primarily and substantially" in Massachusetts. While Marshall's factual contentions, if proven, may carry the day in the context of a motion for summary judgment, they do not provide a basis for denying a motion to amend.

## CONCLUSION

Accordingly, it is ORDERED that the Plaintiff's First Motion To Amend The Complaint (# 32) be, and the same hereby is, ALLOWED to the extent that plaintiff may file and serve a First Amended Complaint which:

(1) adds HEI as a party defendant and sets forth claims against HEI sufficient to allege that

(a) HEI (as distinguished from HEA) committed unfair and deceptive acts in violation of Chapter 93A, and

(b) HEI tortiously injured bailed goods in circumstances in which it was forseeable that Omni–Wave would be the principle loser in the event of damage, and

(2) adds express contract warranties and implied common law warranties against HEA, and

(3) adds the additional allegations contained in the proposed third amendment against Marshall.

It is FURTHER ORDERED that Plaintiff's First Motion To Amend Complaint (# 32) be, and the same hereby is, DENIED to the extent that the motion seeks leave to:

(1) add any claims against HEI on the theory that HEI is the alter ego or agent of HEA, and

(2) add any contract claims against HEI, and

(3) add any claims against HEI and HEA based on the warranty provisions of the Uniform Commercial Code, and

(4) add any warranty claims based on contract or common law against HEI.

To the extent that leave has been herein granted, the Amended Complaint shall be filed and counsel is directed to notify the Court *in writing* when service of process has been effected upon HEI.