CHRISTINE DRAKE & another[1] *vs.* HAROLD F. GOODMAN.

Norfolk. January 4, 1982. — May 3, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Witness*, Expert: qualification. *Evidence*, Expert witness, Rebuttal.

At the trial of an action for medical malpractice at which the minor plain-
tiff contended that the tightness of a plaster cast applied by the defend-
ant had caused her hand to become clenched, the judge did not err in
concluding that two orthopedic specialists, who had treated the minor
plaintiff, were qualified to express opinions as to the absence of a direct
physical cause of the clenched hand. [90-91]

At the trial of an action for medical malpractice, the plaintiffs were not
entitled, as of right, to present a rebuttal witness, where the witness's
proffered testimony would not have rebutted the testimony of the de-
fendant's expert witnesses but, instead, would have introduced a new
theory of causation known to the plaintiffs before trial, namely, that
the physical injury caused by the defendant's negligence produced a
psychological condition which caused the minor plaintiff's clenched
hand; nor, in the circumstances, did the judge abuse her discretion in
denying the plaintiffs' request to present the witness. [91-94]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 25, 1979.

The case was tried before *Fine, J.*

The Supreme Judicial Court granted a request for direct
appellate review.

*William E. Searson, III, (James P. McCarthy* with him)
for the plaintiffs.

*Allan E. Taylor* for the defendant.

WILKINS, J. In this medical malpractice action, the jury
returned a verdict for the defendant. On their appeal, the
plaintiffs challenge the rulings of the trial judge concerning

---

[1] Albert Drake, individually.

the admissibility of evidence.[2] They object to the admission of certain testimony of two defense experts concerning the cause of the minor plaintiff's injuries and to the denial of their request to present a rebuttal witness. There was no error; we affirm the judgment.

For a general background of the case, we summarize certain of the evidence. The plaintiff Christine Drake testified to sustaining an injury to her left hand while attending school on September 12, 1977, and to being treated by the defendant, who placed a circular plaster cast on her arm from her fingers to her elbow. Three days later her fingers had turned blue; they were swollen and cold. Her mother took her to the defendant, who removed the cast and replaced it with a cast of a different kind. Three days later, her fingers were still blue and swollen. The fingers started to "claw up." She returned to the defendant who recommended an operation. Christine's parents took her to another doctor, and she was admitted to a hospital in September. After five days of observation and physical therapy, she was discharged. One attending physician gave a diagnosis of sympathetic dystrophy, a condition in which the sympathetic nervous system becomes hyper-reactive and causes constriction and spasm of the blood vessels, and damage to the tissues. She was again hospitalized in October and November, 1977, from February to June, 1978, and in August, 1980. It was only after an operation during this last admission that her hand was permanently unclenched.

There was a substantial dispute as to whether the clenched hand was caused by the tightness of the cast or was caused by circumstances having nothing to do with any physical injury, at least an injury caused by the defendant. A medical witness for the plaintiffs testified that the type of cast first applied was inappropriate; that the cast was too tight; that the defendant did not supervise the patient adequately; and that the clenched hand was caused by the defendant's negligence. Another witness for the plaintiffs, an orthopedic

[2] We allowed the plaintiffs' application for direct appellate review.

surgeon, testified on cross-examination that there was a psychological element to the problem; that under anesthesia the fingers could be straightened; and that the defendant had caused no serious physical injury to Christine. The defendant offered two expert witnesses who testified that the clenched hand was not the product of any physical injury.

The plaintiffs' case-in-chief was based on a claim that the defendant's negligence in putting on a cast that was too tight and in not properly supervising Christine's treatment caused physical injuries, particularly the clenched hand. Although in the course of the plaintiffs' case, there was evidence that Christine had certain psychological problems, the plaintiffs made no attempt in their case-in-chief to demonstrate that a negligently caused physical injury caused psychological problems which in turn caused the clenched hand.

The defendant's experts, both orthopedic surgeons, testified in effect that Christine's clenched hand had no connection with anything the defendant had or had not done, and that the clenched hand was the product of a psychological rather than a physical problem. One characterized it as "conversion hysteria," and the other described the condition as a "clenched fist syndrome," not related to physical injury.

The plaintiffs argue that the judge erred in permitting these orthopedic witnesses to testify to a psychological basis for Christine's clenched hand. We shall assume that the plaintiffs properly raised the question of the qualifications of these witnesses. These orthopedic surgeons had treated Christine. They had seen similar cases in which a clenched hand had no underlying physical cause but was the consequence of a psychological disorder. They did not testify as to the cause of the psychological disorder but simply to the absence of a direct physical cause for the clenched hand.

The judge was warranted in finding that these orthopedic specialists in surgery to the hand were qualified to express the opinions they did. It is a matter on which the discretion of the presiding judge is to be respected if there is evidence to warrant the judge's conclusion that a witness was compe-

tent to express an opinion. See *Commonwealth* v. *Seit*, 373 Mass. 83, 92 (1977); *Commonwealth* v. *Boyd*, 367 Mass. 169, 182 (1975); *Commonwealth* v. *Devlin*, 365 Mass. 149, 152 (1974). The judge's ruling that the witnesses were qualified to testify to the cause of the clenched hand is particularly justified in this case because they had treated Christine. See *Baker* v. *Commercial Union Ins. Co.*, 382 Mass. 347, 351 (1981); *Kramer* v. *John Hancock Mut. Life Ins. Co.*, 336 Mass. 465, 467-468 (1957); *Commonwealth* v. *Vaughn*, 329 Mass. 333, 335 (1952); *Hastings* v. *Rider*, 99 Mass. 622, 625 (1868).

At the conclusion of the defendant's case, the plaintiffs sought to present a rebuttal witness. The defendant was aware that the plaintiffs might offer such a witness, although that information was transmitted by letter rather than by supplemental answers to interrogatories filed pursuant to Mass. R. Civ. P. 26 (b) (4), 365 Mass. 772 (1974).[3] From the colloquy between the plaintiffs' counsel and the judge, it appeared that the witness would not be immediately available. The plaintiffs' counsel said that the witness would testify that Christine's physical injury "would be an adequate producing cause of the psychiatric damage that she was treated for . . . at Children's Hospital . . . in the Psychosomatic Unit." When pressed as to whether the witness would say the physical injury was the cause of the psychological damage, plaintiffs' counsel indicated that the witness would testify that "the physical injury caused a psychiatric reaction." We assume that the physical injury referred to was an injury allegedly resulting from the defendant's negligence. The defendant, in opposing the plaintiffs' right to present a rebuttal witness, argued that, if the

---

[3] In that letter, dated six days before trial commenced, the plaintiffs' counsel wrote that his witness would testify "that the tight cast which caused a circulatory impairment resulting in flexed fingers, contributed substantially, at a later date, to the ongoing psychiatric problems that Christine Drake suffered when she was treated at the Children's Hospital during the period of February, 1978 up to the present time."

witness were allowed to testify, the defendant would have to present witnesses in surrebuttal.[4]

We pause at this point to discuss the law concerning the right or privilege of a party to present rebuttal evidence. A trial judge has substantial discretion whether to permit the presentation of rebuttal evidence. See *Commonwealth* v. *Clark*, 379 Mass. 623, 632 (1980); *Commonwealth* v. *Wood*, 302 Mass. 265, 267-268 (1939). We subsequently discuss the judge's ruling in terms of an abuse of discretion and conclude that she did not abuse her discretion. There are circumstances, however, in which a party may present rebuttal evidence as a matter of right and in which the denial of that right would be an error of law. Such cases arise when a party seeks to present evidence to refute evidence of the other side. See *Commonwealth* v. *Wood*, *supra* at 267; McCormick, Evidence § 4, at 6 (2d ed. 1972); K.B. Hughes, Evidence § 182 (1961); 6 J. Wigmore, Evidence § 1873 (Chadbourn rev. 1976). There is no right to present rebuttal evidence that only supports a party's affirmative case. We must, therefore, first analyze what the plaintiffs sought to show in rebuttal to determine whether they had a right to make their intended presentation. We conclude that the plaintiffs did not have an absolute right to present that rebuttal evidence.

The plaintiffs sought through their rebuttal witness to present a new theory of causation: the physical injury caused by the defendant's negligence produced a psychological condition that caused the clenched hand. This new theory, in effect, accepted the defendant's evidence that the clenched hand was not directly caused by any physical injury. It did not rebut the testimony of the defendant's experts. Instead, it accepted the existence of a psychological cause of the clenched hand and sought to connect the psychological con-

---

[4] The defendant also argued that the witness could not be presented because the plaintiffs failed to comply with Mass. R. Civ. P. 26, 365 Mass. 772 (1974). We need not decide whether the judge's ruling would have been warranted because the plaintiffs failed to comply with any requirements of rule 26 applicable to the disclosure of a rebuttal witness.

dition to the injury allegedly caused by the defendant. Of course, the new theory contradicted the defendant's contention that there was no underlying physical cause of the clenched hand. It was, however, more the making of an affirmative case than a contradiction of the defendant's evidence.

It was the plaintiffs' burden to prove a causal connection between the defendant's alleged negligence and the clenched hand. We do not accept that a plaintiff may present one theory of causation in his case-in-chief and, as a matter of right, present a different theory of causation in rebuttal. This is not a case in which a defense theory was suddenly advanced to the plaintiffs' surprise. The plaintiffs knew well before trial that there was a question whether there was a psychological cause for the clenched hand. The issue could and should have been faced in the plaintiffs' case-in-chief. Then the defendant could have presented his defense in a single, organized response to the plaintiffs' entire case.

The question remains whether the judge abused her discretion in denying the plaintiffs the opportunity to present the proffered witness. The circumstances recited above demonstrate that there was no abuse of discretion. The plaintiffs' counsel could not state precisely when that witness would be available. It is clear that the proposed witness was not in the courtroom and would not be for at least an hour. The subject of his testimony was one which could have been presented in the plaintiffs' direct case. The plaintiffs were not surprised by the testimony they sought to rebut. The rebuttal testimony would have introduced a new theory of causation known to the plaintiffs before trial.[5]

We conclude that the trial judge did not abuse her discretion in denying the plaintiffs the right to present a rebuttal witness. This is an issue on which we give substantial dis-

---

[5] There is a suggestion in the argument of the plaintiffs' counsel to the judge that the case was already "in on the question of the emotional aspect." If so, then the testimony of the rebuttal witness was offered only to bolster the plaintiffs' case-in-chief and was in no sense rebuttal testimony.

cretion to the judge conducting the trial. For that reason, a party would be well-advised to obtain the judge's ruling on the matter of his right to present a rebuttal witness before resting his case-in-chief.

We note finally that, even if we had decided that it was error to deny rebuttal, the error would not have been so prejudicial as to require reversal. The rebuttal witness, as far as we can discern from the record, was a psychiatrist who would have testified on causation. His testimony would not have been related in any way to the question of the defendant's negligence. The jury returned a verdict for the defendant. If the defendant had been negligent in causing the cast to be too tight, or in some other way, there was evidence warranting a finding of damages for Christine's discomfort and for the cost of further medical services, quite apart from the clenched hand itself. Thus, it seems most likely that the jury based their verdict on the failure to prove negligence and not on the absence of proof of any damages flowing from the defendant's negligence. In this circumstance, we can see in retrospect that the plaintiffs were not prejudiced by the refusal of the judge to permit them to present a rebuttal witness who would have testified not to the defendant's negligence, but only to matters relating to causation.

*Judgment affirmed.*