KATHERINE E. MASON, administratrix,[1] & another[2] *vs.*
GENERAL MOTORS CORPORATION & another.[3]

Middlesex. October 7, 1985. — March 28, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Sale,* Warranty. *Uniform Commercial Code,* Warranty. *Warranty. Motor
Vehicle,* Defect, Dealer. *Negligence,* Motor vehicle, Manufacturer. *Bail-
ment. Practice, Civil,* Argument by counsel. *Evidence,* Rebuttal.

In the circumstances presented in an action against the manufacturer of a
motor vehicle and the dealer which supplied it to two persons for a test
drive, a judgment favorable to the manufacturer on the plaintiffs' breach
of warranty claim would not estop the plaintiffs from litigating their
warranty claim against the dealer if this court had concluded that summary
judgment in the dealer's favor had been incorrectly granted, where the
plaintiffs' warranty claim was sufficiently broad to include defects arising
after the manufacturer delivered the vehicle to the dealer. [185-186]
A motor vehicle dealer's bailment of a vehicle for test driving by a potential
buyer is not a transaction in which a warranty of merchantability is
implied under G. L. c. 106, § 2-314. [186-190] LIACOS, J., dissenting.
At the trial of an action against the manufacturer of a motor vehicle, in which
the plaintiffs alleged negligence and breach of warranty, the plaintiffs
were not entitled, during their closing argument to the jury, to comment
on the manufacturer's nonperformance of a certain crash test when de-
signing this type of vehicle where nothing in the record indicated that
the test would have disclosed useful information which might have
enabled a prudent manufacturer to avoid the results of a particular acci-
dent. [191-193]
In a civil action the judge was within his discretion in precluding the plain-
tiffs from reading to the jury, as rebuttal evidence, portions of the
deposition of a prospective expert witness for the defense, who was
never called to testify, which only supported the plaintiff's affirmative
case. [193]

[1] Of the estates of Robert L. Day, Sr., and Robert L. Day, Jr.

[2] Marguerite M. Day.

[3] Donahue Chevrolet, Inc.

CIVIL ACTION commenced in the Superior Court on August 31, 1976.

A motion for partial summary judgment was heard by *Andrew G. Meyer*, J., and the case was tried before *George N. Hurd, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard K. Donahue* (*Jerry E. Benezra* with him) for the plaintiffs.

*Patrick F. Brady* (*Andrew D. Kaizer* with him) for General Motors Corporation.

*Joseph B. Bertrand* for Donahue Chevrolet, Inc.

O'CONNOR, J. This is a motor vehicle tort case arising out of a fatal accident involving a 1976 Chevrolet Corvette automobile manufactured by General Motors Corporation (General Motors) and owned by Donahue Chevrolet, Inc. (Donahue Chevrolet). In the complaint, Katherine E. Mason, as administratrix of the estates of Robert L. Day, Sr., and Robert L. Day, Jr., and as representative of the decedents' next of kin, made claims for conscious suffering and wrongful death against General Motors and Donahue Chevrolet due to negligence and breach of warranty. On the same grounds, Mason, as the temporary conservator of the estate of Marguerite M. Day, and thereafter, Marguerite M. Day on her own behalf sought consequential damages and damages for loss of consortium. The complaint was subsequently amended to add claims for negligent infliction of emotional distress against the defendants. Prior to trial, Donahue Chevrolet moved for summary judgment on the breach of warranty counts against it on the ground that there was "no allegation that the vehicle in question was sold or leased by the defendant to any of the plaintiffs or their decedents." The motion was granted. After a lengthy trial, the jury returned verdicts for the defendants on all the remaining counts. The plaintiffs appeal from the allowance of Donahue Chevrolet's motion for summary judgment and from the judgment entered for General Motors. We transferred this case from the Appeals Court on our own motion. There was no error.

For introductory purposes only, we summarize the facts the jury could have found based on the evidence introduced at trial. On the morning of April 21, 1976, Robert L. Day, Sr., and his son, Robert L. Day, Jr., were killed when the automobile they were driving, a 1976 Chevrolet Corvette Stingray, struck a cable guardrail on Route 111 in Groton. Prior to the accident, Donahue Chevrolet had used the accident vehicle for demonstration purposes, and the vehicle had been driven to and from the dealership by the general manager of Donahue Chevrolet. On the morning of the accident, the Days went to Donahue Chevrolet to inquire about service for a vehicle which the elder Day had recently purchased from the dealership. During a conversation with the general manager, the elder Day mentioned that his son had never had a ride in a Corvette and asked permission to take the accident vehicle for a drive. The general manager responded affirmatively to his request and gave him the keys to the vehicle. Approximately fifteen minutes later, the Days were fatally injured.

Although no one observed the accident, the evidence indicated that the elder Day lost control of the vehicle and the vehicle skidded off the road and collided with a two-cable guardrail. There was expert testimony that the vehicle was travelling between seventy and eighty miles an hour at the time of the accident. At the point of impact, it could have been found that the upper cable rode over the hood of the car, cut through the "A pillars" on either side of the windshield, and virtually decapitated the Days.

1. *Summary Judgment.*

Donahue Chevrolet argues that, even if the breach of warranty claims against the dealership were improperly dismissed, the plaintiffs are estopped from litigating those claims on remand because of the jury verdicts for General Motors on the breach of warranty claims asserted against it. If we were to agree with Donahue Chevrolet's estoppel argument, it would be unnecessary for us to consider whether the judge was correct in allowing the summary judgment motion.

We agree that the plaintiffs should be estopped from relitigating claims that the vehicle was defectively designed. But the

record before us does not permit us to conclude that the plaintiffs' breach of warranty claims against Donahue Chevrolet are limited to design defects. The amended complaint is not so confining, and we have been furnished with no affidavits or other materials which would justify the conclusion that the plaintiffs' claims do not include defects arising after delivery of the vehicle to Donahue Chevrolet. If the plaintiffs' breach of warranty claims against Donahue Chevrolet were otherwise sufficient to withstand a motion to dismiss, which we hold they were not, the plaintiffs would not be precluded from presenting claims they never have had the opportunity to present. Surely the plaintiffs' failure to present evidence of postdelivery defects at trial, after Donahue Chevrolet's motion to dismiss the breach of warranty claims against it had been allowed, would not bar the plaintiffs from litigating those claims for the first time on remand.

Having concluded that the plaintiffs would not be estopped from litigating their breach of warranty claims against Donahue Chevrolet we come to the question whether summary judgment was correctly granted. As we have noted, the record appendix does not show what documents were presented to the judge in connection with Donahue Chevrolet's summary judgment motion. In their brief in this court, however, the plaintiffs rely on Donahue Chevrolet's answers to interrogatories as establishing, for the purpose of dealing with the summary judgment motion, that the accident happened while the elder Day, as a potential customer and with Donahue Chevrolet's permission, was testdriving the vehicle. We consider the motion on that basis. The parties agree that the issue is whether, as Donahue Chevrolet contends, a sale, or a contract to sell, or a lease is necessary in order for a warranty of merchantability to be implied under Massachusetts law. If Donahue Chevrolet's contention is correct, as we hold it is, the judge properly allowed the motion for summary judgment.

General Laws c. 106, § 2-318 (1984 ed.), provides in pertinent part that "[l]ack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages

for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods." The plaintiffs argue that, although there was no privity between the Days and Donahue Chevrolet, the Days were potential customers trying out the accident vehicle and therefore they were persons "whom the . . . supplier [Donahue Chevrolet] might reasonably have expected to use, consume or be affected by" the vehicle. The plaintiffs conclude that, if the vehicle was defective when the Days took possession of it, and their injuries and death were caused by the defect, they are entitled to damages from Donahue Chevrolet on a breach of warranty theory.

It is true, of course, that under G. L. c. 106, § 2-318, lack of privity between a plaintiff and a defendant is not a defense to a claim for breach of an implied warranty of merchantability. But, the fact that lack of privity is not a defense to a breach of warranty claim sheds no light on the logically prior question whether a warranty has indeed been made. Despite the motion's imperfect statement of grounds for the grant of summary judgment, the principal question raised by the motion is whether Donahue Chevrolet warranted the vehicle to anyone — not whether the Days or the plaintiffs may claim the benefit of any warranty that may have been made.

The Uniform Commercial Code was enacted in this Commonwealth in 1957, effective October 1, 1958. St. 1957, c. 765. General Laws c. 106, § 2-314, as appearing in St. 1957, c. 765, § 1, provides in material part that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." That section creates and defines an implied warranty of merchantability, and it also prescribes the type of transaction in which a warranty of merchantability is implied, namely a contract for the sale of goods. In turn, G. L. c. 106, § 2-106, as appearing in St. 1957, c. 765, § 1, defines a contract for the sale of goods as including both a present sale of goods and a contract to sell goods at a future time. Section 2-106 also

provides that a " 'sale' consists in the passing of title from the seller to the buyer for a price." Read together, §§ 2-314 and 2-106 provide that a warranty of merchantability is implied in two situations: (1) when title to goods passes for a price, and (2) when a contract is made for the future passing of title to goods for a price.

The function of G. L. c. 106, § 2-318, as appearing in St. 1957, c. 765, § 1, was not to create or define a warranty, or to determine the type of transaction in which a warranty would be implied, but rather was to describe the class of persons who would benefit from warranties recognized elsewhere in the statute. Originally, that class of persons was limited to members of the family or household of the buyer and to the buyer's guests, but the class was subsequently enlarged by St. 1971, c. 670. That statute amended G. L. c. 106, § 2-318, to extend the statutorily recognized warranties to all persons "whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods." Then, St. 1973, c. 750, struck G. L. c. 106, § 2-318, and inserted a new § 2-318 in its place.

As appearing in St. 1973, c. 750, § 1, § 2-318 provided, in pertinent part, as follows: "Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, *lessor* or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, *lessor* or supplier might reasonably have expected to use, consume or be affected by the goods. The manufacturer, seller, *lessor* or supplier may not exclude or limit the operation of this section." (Emphasis added.) Statute 1973, c. 750, further provided that the new § 2-318 "shall apply to leases which are made and to injuries which occur after the effective date of [the] act." St. 1973, c. 750, § 2.[4] As we have explained, the fact that lack of privity is not a

---

[4] The last amendment to G. L. c. 106, § 2-318, provides: "Section 2-318 of chapter 106 of the General Laws, as most recently amended by section 1 of chapter 750 of the acts of 1973, is hereby further amended by striking

defense to a breach of warranty claim against a lessor or anyone else does not establish the existence of warranties in connection with particular transactions. Nevertheless, although § 2-314 has never been amended to include leases as transactions in which a warranty of merchantability is implied, it is clear that in enacting St. 1973, c. 750, the Legislature viewed leases as transactions in which the law implies a warranty. Recognizing that fact, we said in *Back* v. *Wickes Corp.,* 375 Mass. 633, 639 (1978), that "[t]he Legislature has sanctioned the judicial extension of warranty liability, in a proper case, to nonsales transactions such as commercial leases. St. 1973, c. 750, further amending G. L. c. 106, § 2-318."

Thus, in Massachusetts, under G. L. c. 106, § 2-314, a warranty of merchantability is implied in present sales of goods and in contracts for the future sale of goods, and, as a result of judicial extension of warranty liability sanctioned by the Legislature, § 2-318, a warranty of merchantability is implied in leases of goods. See *Back* v. *Wickes Corp., supra* at 639. There is no statutory language, however, that reasonably may be construed as either creating or sanctioning the judicial creation of a warranty in connection with a bailment of the kind that occurred in this case. It is true, as the plaintiffs have been careful to remind us, that we have said that "[a]mendments to the Massachusetts version of the Uniform Commercial Code make clear that the Legislature has transformed warranty liability into a remedy intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted by a great many other jurisdictions," *id.,* and that we have said that warranty liability in Massachusetts is "as comprehensive as that provided by § 402A of the Restatement [(Second) of Torts (1965)]."*Swartz* v. *General Motors Corp.,* 375 Mass. 628, 630 (1978). We also said in *Back* v. *Wickes Corp., supra* at 640, that "[t]he Legislature has made the Massachusetts law of warranty congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A (1965)."

out the last sentence and inserting in place thereof the following sentence:— All actions under this section shall be commenced within three years next after the date the injury and damage occurs." St. 1974, c. 153.

*Hayes* v. *Ariens Co.*, 391 Mass. 408, 412 (1984). *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 353 (1983). See *Wolfe* v. *Ford Motor Co.*, 386 Mass. 95, 97-98 (1982). Our statements were made in cases in which sales had in fact taken place. Once a transaction has occurred in which a warranty is implied by our statute, as in the cases cited above, the nature of the warranty and the parties benefited by it are the same as, or at least very similar to, the warranties and beneficiaries recognized in § 402A of the Restatement, and the remedies are congruent. However, unlike our warranty law, under § 402A an injured plaintiff may recover damages resulting from a defective product regardless of whether title to the product passed or there was a contract to pass title to the product or the product was leased. We did not intend our statements to encompass transactions other than contracts of sale and leases. In any event, our statements did not insert in the statute words that the Legislature had not put there.

Our conclusion that our statute reasonably cannot be construed to provide the plaintiff with a remedy against Donahue Chevrolet finds support elsewhere. Numerous courts have declined to extend § 2-314 warranties to transactions other than sales. See, e.g., *Allen* v. *Ortho Pharmaceutical Corp.*, 387 F. Supp. 364, 367-368 (S.D. Tex. 1974); *Zanzig* v. *H.P.M. Corp.*, 134 Ill. App. 3d 617, 626-627 (1985); *Stanley* v. *Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1147 (Me. 1983); *Garfield* v. *Furniture Fair-Hanover*, 113 N.J. Super. 509, 511-512 (1971); *Baker* v. *Promark Prods. West, Inc.*, 692 S.W.2d 844, 847 (Tenn. 1985). Furthermore, the plaintiffs have not cited, nor has our research revealed, any case, in any of the forty-nine States that have adopted some version of article 2 of the Uniform Commercial Code, in which a court has implied a warranty of merchantability with respect to a bailment like the one involved in this case.

Understandably, in view of our previous declarations, the plaintiffs have not urged us either to create common law warranty remedies in addition to those mandated or sanctioned by the Legislature, or to hold that in this Commonwealth there is strict tort liability apart from liability for breach of warranty

under the Uniform Commercial Code, G. L. c. 106, §§ 2-314 — 2-318. Nevertheless, we discuss that subject briefly. Whether liability for products that are defective without fault should be imposed in this Commonwealth, and, if so, what types of transactions should give rise to liability, are matters of social policy to which the Legislature has given its attention. In *Back* v. *Wickes Corp., supra* at 639-640, and *Swartz* v. *General Motors Corp., supra* at 630-631, we decided to defer to the Legislature's judgment in those matters, and, we believe, rightly so. We are unwilling, therefore, to hold today that, apart from liability for breach of warranty under our statute, there may be liability without fault for defective products. The Legislature is free to change the law in that regard if it chooses to do so. We hold, therefore, that the judge correctly granted Donahue Chevrolet's motion for partial summary judgment.

2. *The Trial.*

The plaintiffs assign as reversible error two aspects of the trial. First, the plaintiffs argue that the judge improperly restricted their closing argument to the jury. There was evidence at trial that General Motors had not performed crash tests involving Corvette automobiles and cable guardrails. At trial, during the redirect examination of one of its witnesses, General Motors asked "why" this particular type of crash test had not been performed. The plaintiffs objected and the objection was sustained. General Motors then made several attempts to rephrase the question and on each occasion the plaintiffs objected and the objections were sustained. No explanation for the nonperformance of the tests was introduced in evidence. Prior to closing arguments, General Motors moved to preclude the plaintiffs from commenting on the fact that General Motors had not conducted such tests. The judge granted the motion. The judge reasoned that it would not be fair to allow the plaintiffs to argue this fact to the jury when General Motors had been prevented from explaining to the jury its reasons for not conducting crash tests of Corvette automobiles and cable guardrails. While it can be argued that the judge's reasoning is not entirely correct, the ruling itself was proper nonetheless.

The plaintiffs argue that they should have been allowed to comment on General Motors' failure to conduct this particular type of crash test because this failure was a fact in evidence in the case. According to the plaintiffs, a party is entitled to comment during closing argument on facts in evidence. The plaintiffs, however, overstate the scope of proper closing argument. The scope of proper closing argument is limited to comments on facts in evidence that are relevant to the issues and the fair inferences which can be drawn from those relevant facts. The burden of establishing the relevance of a fact is on the party seeking to argue that fact to the jury.

In the present case, the plaintiffs did not demonstrate to the trial judge and do not demonstrate now how the fact that General Motors did not crash-test Corvettes into cable guardrails is relevant to their claims of negligence and breach of warranty against General Motors. For example, the plaintiffs have pointed to no evidence in the record indicating that, if such a test could have been performed, useful engineering information would have been derived from the test, or that any such information would have enabled a prudent automobile manufacturer to have prevented the consequences of this particular accident. Furthermore, the plaintiffs have not shown that the performance of this particular type of crash test would have resulted in information not already known to General Motors. If General Motors already knew that the force generated from a collision between a Corvette travelling seventy miles an hour and a cable guardrail would sever the A-pillars of the vehicle, then General Motors' nonperformance of such a test would not constitute negligence. Standing alone, General Motors' failure to perform this particular type of crash test was simply not relevant and, therefore, the judge properly exercised his discretion in ordering the preclusion of comment on the subject.

Furthermore, the plaintiffs commented on this evidence despite the judge's ruling. Specifically, the plaintiffs stated in their closing, "The nose [of a Corvette] is such . . . that the last and only defense were the A-pillars. . . . Now, what did they give us, what did they give us? An untested pillar, a pillar that they can't tell you what it will resist." The plaintiffs cannot

properly claim now that the judge's order, even if it was errone-ous, was harmful and therefore reversible error.

Finally, the plaintiffs assert that reversal is required because the judge erroneously precluded them from reading to the jury as rebuttal evidence certain portions of the deposition of Dr. Shyne, an independent expert retained before trial by General Motors. Dr. Shyne was "noticed" by General Motors as a potential witness but was not called to testify at trial. Dr. Shyne had testified at his deposition, inter alia, that it was possible to design a pressure test of A-pillars with three-quarter inch steel cable and that it would have been possible to construct stronger A-pillars out of low alloy steel. The plaintiffs argue that because General Motors had noticed Dr. Shyne as a witness but then did not call him to testify at trial, it was unfair for the trial judge to preclude the plaintiffs from presenting portions of Dr. Shyne's deposition testimony as rebuttal evidence.

A trial judge has substantial discretion in determining whether to allow the presentation of rebuttal evidence. *Drake v. Goodman,* 386 Mass. 88, 92 (1982). " There is no right to present rebuttal evidence that only supports a party's affirma-tive case." *Id.* In their brief, the plaintiffs admit that the prof-fered testimony would have demonstrated "various critical ele-ments of the plaintiffs' case." As such, the plaintiffs were not entitled as a matter of right to present portions of Dr. Shyne's deposition in rebuttal. In addition to any potential problems under Mass. R. Civ. P. 32, as amended, 392 Mass. 1105 (1984), regarding the introduction of deposition testimony, the judge was well within his discretion in precluding the presen-tation of such evidence in rebuttal even if it was relevant.

*Judgments affirmed.*

LIACOS, J. (dissenting). I do not agree that the judge properly allowed the motion for summary judgment. Consequently, I dissent from the result reached by the court. I believe that the court's action today too firmly closes the door of implied war-ranty against those injured consumers whose commercial rela-

tionships with merchants do not satisfy the formalities of a completed lease or sale.

In Massachusetts, we have not formally adopted § 402A of the Restatement (Second) of Torts (1965). Instead, we have taken the view that the Legislature has made the law of warranty "a remedy intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted by a great many other jurisdictions." *Back* v. *Wickes Corp.*, 375 Mass. 633, 639 (1978). Our "warranty" cause of action encompasses aspects of social policy normally associated with tort law and "jettison[s] many of the doctrinal encumbrances of the law of sales." *Id.* at 640. The court today unfortunately retrieves one of those encumbrances in its strict limitation of implied warranties. In my view, the court moves in the wrong direction. We should seek to join those jurisdictions that follow the enlightened views expressed in Restatement (Second) of Torts § 402A, *supra.* Indeed, until today, I had thought the court committed to that course. See, e.g., *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 630 (1978).

Even if the court adhered solely to the policies of the Uniform Commercial Code, it gives too narrow a construction to the relevant provisions of the Code. General Laws c. 106, § 2-314 (1984 ed.), provides in part: "(1) Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." [1] Subsection (1) states that a warranty is implied not in the sale of goods, but in the "contract for their sale." As we pointed out in *Back* v. *Wickes Corp., supra,* the warranty applies equally to leases.

---

[1] Subsection (3) of G. L. c. 106, § 2-314 provides: "Unless excluded or modified by section 2-316, other implied warranties may arise from course of dealing or usage of trade." I address primarily the application of subsection (1), the implied warranty of merchantability. It may be that the Legislature, through subsection (3), has provided a remedy for some plaintiffs otherwise foreclosed under subsection (1).

Although we have said that warranty in Massachusetts is as comprehensive as strict liability theory in other jurisdictions, cases like this one provide a demonstration that this may not be true. For an otherwise-foreclosed plaintiff in the future, an action based on the strict liability theory of § 402A of the Restatement (Second) of Torts might be appropriate.

See *ante* at 189. " 'Contract for sale [or lease]' includes both a present sale [or lease] of goods and a contract to sell [or lease] goods at a future time." G. L. c. 106, § 2-106 (1) (1984 ed.). This definition is intended to limit the application of Article 2 of the Uniform Commercial Code to contracts for transactions in goods. It is not intended to limit its application to situations in which a sale or lease has already occurred. See Comment 1 to § 2-106 of the Uniform Commercial Code, 1 U. L. A. (Master ed. 1976). " 'Contract' means the total legal obligation which results from the parties' agreement . . . ." G. L. c. 106, § 1-201 (11) (1984 ed.). " 'Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance . . . ." G. L. c. 106, § 1-201 (3) (1984 ed.). This broad language demonstrates that the provisions of G. L. c. 106 are to be construed liberally to achieve the intent of the parties. See G. L. c. 106, § 1-102 (1984 ed.).

It is proper, therefore, in considering whether an implied warranty was made, to examine the entire bargain of the parties, as shown by the evidence or — on a motion for summary judgment — as revealed in the pleadings, depositions, answers to interrogatories, admissions and affidavits. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The record contains the answers of the defendant Donahue Chevrolet to the plaintiffs' interrogatories. Donahue Chevrolet admits that the elder Day was a potential customer given permission in accordance with Donahue's test-drive policy to drive the motor vehicle involved in the accident. In my view, the plaintiff should have been permitted to proceed.

The test drive was a bailment for mutual benefit.[2] The plaintiffs may have been able to demonstrate that the over-all trans-

---

[2] A bailment for mutual benefit is a contract in which the bailment was made and accepted for the purpose of deriving benefit or profit. A test drive of an automobile is a bailment for mutual benefit. See *Wilcox* v. *Glover Motors, Inc.,* 269 N.C. 473, 481 (1967). See also cases collected in 8 Am. Jur. 2d Bailments § 21 (1980). I find no difficulty in the concept that at least some bailments for mutual benefit come within the definition of leases as contemplated by the Legislature when it enacted St. 1973, c. 750.

action of an automobile sale or lease might include a bailment, which, standing alone, would otherwise seem to have been gratuitous,[3] but, as one part of the entire transaction, would come within the statute. Cf. *Cheshire* v. *Southampton Hosp. Ass'n,* 53 Misc. 2d 355 (N.Y. Sup. Ct. 1967) (transaction *in its entirety* a service contract, but plaintiff may be able to prove a sale; motion to dismiss denied); *Skelton* v. *Druid City Hosp. Bd.,* 459 So. 2d 818, 821 (Ala. 1984) (use of suturing needle in surgery was "transaction in goods" raising implied warranty under UCC). It is conceivable that in the usage of the automobile trade, the loan of an automobile, or even the furnishing of chauffeured transportation, to a customer or potential customer might be considered part of the inducement, or consideration, for the sale or lease of an automobile. Cf. *Miller* v. *Hand Ford Sales, Inc.,* 216 Or. 567, 575 (1959) (automobile loaned to service customer would create bailment for mutual benefit if bailor held out offer to public that in return for consideration of business to be transacted he would create this benefit for bailee). If such an integration of the relationship between the dealer and the customer were proved to be part of the parties' agreement, I would hold that from that transaction implied warranties arise. Because the contract may be for a future sale or lease, the automobile sold or leased need not yet have changed hands for the contract to exist.

---

[3] "A distinction should be made between 'pure' gifts having no sales overtones, and those that are part of an advertising arrangement with the ultimate aim of making a sale. The former should be beyond the reach of the implied warranty of merchantability, whereas the latter can be considered so closely allied to selling as to become a sale for purposes of section 2-314." 2 W. Hawkland, Uniform Commercial Code Series § 2-314:03, at 323 (1984).