## COMMONWEALTH *vs.* UPTON U.,[1] a juvenile.

No. 01-P-1148.

Norfolk. October 11, 2002. - September 10, 2003.

Present: PERRETTA, BECK, & RAPOZA, JJ.

*Evidence,* Tape recording, Videotape, Cross-examination, Fresh complaint, Rebuttal. *Child Abuse.*

On appeal from adjudications of delinquency on two counts of indecent assault and battery on a child under the age of fourteen years, this court concluded that, in light of defense counsel's cross-examination of the Commonwealth's expert witness and the substantial similarities in the essential points of the testimony of the victim, the victim's mother, and the Commonwealth's expert, there was no basis for reversing the juvenile's adjudications of delinquency due to the lack of a videotape recording of a police detective's Sexual Abuse Intervention Network interview with the victim. [255-256]

On appeal from adjudications of delinquency on two counts of indecent assault and battery on a child under the age of fourteen years, this court concluded that the testimony of the victim's mother and the Commonwealth's expert witness was within the bounds of permissible fresh complaint evidence, and that, contrary to the juvenile's contention, the evidence was not unduly prejudicial. [256-258]

At the trial of a complaint charging a juvenile with two counts of indecent assault and battery on a child under the age of fourteen years, the judge did not err in allowing the request of the Commonwealth to present a rebuttal witness to testify about interviewing techniques and patterns of behavior of sexually abused children, evidence which the Commonwealth contended was relevant and necessary to refute the juvenile's evidence concerning the victim's sexual behavior and to speak to recognized techniques of interviewing sexually abused children, where the rebuttal witness's testimony did not touch upon the credibility of any witness, and where the judge was well within her discretion in allowing the witness to testify in rebuttal. [258-260]

COMPLAINT received and sworn to in the Quincy Division of the District Court Department on April 28, 1998.

The case was heard by *Joseph R. Welch,* J.

[1] A pseudonym.

*Nadell Hill* for the juvenile.

*Susanne M. O'Neil,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On appeal from his adjudications of delinquency on two counts of indecent assault and battery on a child under the age of fourteen years, the juvenile claims errors in the trial judge's refusal to sanction the Commonwealth for what the juvenile alleges was a failure to preserve potentially exculpatory evidence, and in the allowance of fresh complaint and rebuttal testimony in evidence. We affirm the adjudications.

1. *The facts.* There was evidence as to the following facts. At the time of the alleged abuse in question, the juvenile was fourteen years old and the babysitter for three siblings, Carol (age five), Mary (age two), and Michael (age seven).[2] While babysitting, and as Michael watched television in another room, the juvenile would expose himself to Carol and Mary and make them touch his penis.

Carol testified that the juvenile would put his "private" on her "private," that when he did so, he told her that "vanilla" would come out of his "private" part, that he "had [Mary] lick" his penis but that when he asked her, Carol, to do the same, she refused, and that he exposed himself "almost ever[y] time" that he babysat. Carol also related that on one occasion when the juvenile was exposing himself to her, Michael "peeked in through the door."

Michael told the jury that when the juvenile babysat, he would watch television while the juvenile and his sisters went into another room for about thirty minutes. Michael testified that on one occasion he went into their room and saw Carol standing on the bed and Mary "leaning down to [the juvenile's] private," and "trying to lick his private." He, Michael, said nothing and left the room.

Janet, the children's mother, related how she had left Carol and Mary in the juvenile's care while she and Michael attended a science fair. Upon her arrival home, Janet heard Carol talking about something and the juvenile telling Carol "don't say that" and calling Carol a "liar." When Janet asked the juvenile what

[2]These names are pseudonyms.

the commotion was about, Carol said that the juvenile "let me touch . . . ." The juvenile, his face red, interrupted Carol and said "my private." At this point, the juvenile's mother arrived to take him home. As he was leaving, he said: "Ask [Michael]. [Michael] knows she said this before."

After the juvenile's departure, Janet asked Carol about the conversation that she had overheard. Carol then told her mother what the juvenile had been doing to her and Mary and how she (Carol) had touched the juvenile's penis. Carol also told her that when she rubbed the juvenile's penis, "he peed on [the] floor" and told her it "was vanilla, but she said it looked like he was peeing."

Janet reported these disclosures to law enforcement officials, and Carol was interviewed at the district attorney's office. Mora Cesarini, a detective with the local police department, testified that she had observed and taken notes during the Sexual Abuse Intervention Network (SAIN) interview with Carol. Cesarini related that during Carol's interview, Carol stated that the juvenile showed her his penis, that sometimes she rubbed it, that "if you rubbed it so hard vanilla would come out," and that sometimes the juvenile "would touch his private to her private." Cesarini also testified that she turned her notes of the interview over to the SAIN interviewer from the district attorney's office who, in turn, wrote a report based upon Cesarini's notes. This procedure was the same as that used by the department of psychiatry at Children's Hospital.

To demonstrate that the allegations were the result of Carol's precociousness, the juvenile presented evidence to show that the first time he babysat for the children, Carol walked in on him while he was using the bathroom. He told his mother and Janet about this occurrence, and Janet told the juvenile's mother that she would speak to Carol. On other nights that he babysat, Carol ran about the house unclothed. This was also a topic of conversation between the two mothers. During the time period here relevant, the juvenile's sister and her boyfriend would babysit the children. Carol would sit in the boyfriend's lap, hugging him and calling him "Daddy." She once walked in on the boyfriend while he was using the bathroom. There was also evidence to the effect that Carol would put her hands in her

pants, that she and her siblings spoke about their bodies, and Carol talked about the fact that she did not have a penis.

Because the juvenile also presented expert testimony on the importance and significance of the manner in which the SAIN interview was conducted, the Commonwealth was allowed to present the rebuttal testimony of Susan Meyer, a licensed social worker, who testified upon interviewing techniques and behavior patterns of sexually abused children.

The jury found the juvenile delinquent on two counts of indecent assault and battery on a child under the age of fourteen years as to Carol, and not delinquent on the one count of rape of a child as to Mary.

2. *Failure to preserve evidence.* Because the SAIN interview of Carol was not videotaped, the juvenile filed a pretrial motion seeking to preclude Carol, Janet, and Cesarini from testifying. He claimed that the failure to videotape the interview was tantamount to the loss or destruction of exculpatory evidence. The judge denied the motion, and the juvenile did not renew his objection on this ground when any of the three witnesses testified.[3] The claim on appeal is that because the SAIN interview was not videotaped, Cesarini should not have been allowed to testify.[4]

Although we have acknowledged the fact that the electronic recording of SAIN interviews is good practice, we have never required that such recordings be made. See *Commonwealth v. Allen*, 40 Mass. App. Ct. 458, 463 & n.9 (1996). Cf. *Com-*

---

[3]Because we see no error in the judge's ruling, we need not consider whether the appropriate standard of our review of this claim is prejudicial error or a substantial risk of a miscarriage of justice. See *Commonwealth v. Gabbidon*, 398 Mass. 1, 7 (1986); *Commonwealth v. Allen*, 40 Mass. App. Ct. 458, 460-461 (1996); *Commonwealth v. Albert*, 51 Mass. App. Ct. 377, 384-385 (2001).

[4]The juvenile also suggests that the Commonwealth should have preserved Cesarini's interview notes which, as she testified, she turned over to the district attorney's office. To the extent this suggestion constitutes argument, it is without merit. The juvenile has made no showing of any kind, let alone a " 'reasonable possibility, based on concrete evidence rather than a fertile imagination,' that access to the [notes] would have produced evidence favorable to his cause. *State v. Michener*, 25 Or. App. 523, 532 (1976). See *Commonwealth v. Andrade*, 389 Mass. 874, 879 (1983)." *Commonwealth v. Neal*, 392 Mass. 1, 12 (1984).

*monwealth* v. *Diaz,* 422 Mass. 269, 271-273 (1996) (a defendant has no right to an electronic recording of police interrogation); *Commonwealth* v. *Baldwin,* 426 Mass. 105, 110-113 (1997), cert. denied, 525 U.S. 820 (1998); *Commonwealth* v. *Lo,* 428 Mass. 45, 48 (1998) (a defendant has no right to electronic recording of psychiatric examination conducted in accordance with *Blaisdell* v. *Commonwealth,* 372 Mass. 753 [1977]). Rather, as stated in *Commonwealth* v. *Baldwin,* 426 Mass. at 113, "wide-ranging cross-examination, including inquiry as to why an accurate record was not made of [the interview], is the appropriate antidote to potential overreaching, bias, or mischaracterization of evidence by an agent of the State."

In the instant case, counsel for the juvenile was given broad range on his cross-examination of Cesarini regarding the lack of a video of the SAIN interview as well as any failure by her to preserve her handwritten notes of that interview. Moreover, counsel questioned the Commonwealth's expert rebuttal witness, see part 4, *infra,* as to the potential importance of an interviewer's body language, the tone and phrasing of the questions, and other like issues. In light of defense counsel's cross-examination of the Commonwealth's expert witness and the substantial similarities in the essential points of the testimony of Carol, Janet, and Cesarini, we conclude that there is no basis for reversing the juvenile's adjudications of delinquency due to the lack of a recording of Carol's SAIN interview.

3. *The fresh complaint testimony.* When Carol was asked on direct examination whether she ever saw anything come from the juvenile's penis, she testified that she had not but that the juvenile told her "something did" and said it was "vanilla."[5] Based upon Carol's response to this particular question, the

---

[5]More specifically, the direct examination on this point was:

PROSECUTOR: "Did you see anything come out of his private?"

CAROL: "No."

PROSECUTOR: "I'm sorry?"

CAROL: "He said something did."

PROSECUTOR: "What would he say?"

CAROL: "He said it was vanilla."

PROSECUTOR: "It was vanilla, and he told you that? Did you see the vanilla?"

CAROL: "No."

juvenile argues that Janet and Cesarini's testimony was inadmissible because it went beyond Carol's testimony. Although Janet's and Cesarini's testimony differed somewhat from Carol's response to the prosecutor's question about whether she ever saw anything come from the juvenile's penis, the difference did not in any way require exclusion of the fresh complaint testimony. As stated in *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992):

> "This court has never insisted that fresh complaint testimony be sanitized to match exactly the testimony of the complaining witness. Such a rule would undermine the purpose of allowing a witness to testify as to the details of a victim's complaint, which is to let the jurors draw their own conclusions regarding whether the fresh complaint evidence corroborates the victim's testimony. . . . Moreover, such a rule would deprive defendants of the opportunity to highlight discrepancies between the testimony of the witness and the complainant in order to discredit the complainant's testimony. . . . We have, however, cautioned that fresh complaint evidence cannot be used as hearsay to fill gaps in the prosecution's case."

See *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 445 & n.6, cert. denied, 519 U.S. 1015 (1996) (fresh complaint testimony that defendant had performed anal sex on victim not error where victim testified that defendant had touched her "rear end" with his penis); *Commonwealth* v. *Snow*, 30 Mass. App. Ct. 443, 446 (1991) (fresh complaint testimony that defendant ejaculated added nothing essential to Commonwealth's case where victim testified that defendant had penetrated her). Contrast *Commonwealth* v. *McCaffrey*, 36 Mass. App. Ct. 583, 585, 589 (1994) (reversible error to allow fresh complaint testimony of fellatio where victim testified about digital penetration of her vagina).

Our conclusion, that the testimony of Janet and Cesarini was within the bounds of permissible fresh complaint evidence, requires us to consider the juvenile's claim that the evidence should have been excluded on the basis that it was unduly prejudicial. More specifically, the juvenile argues that because a child of Carol's age would not likely know anything about

ejaculation unless she was present when someone had ejaculated, the fresh complaint testimony undermined his defense. We need say no more than that the argument overlooks the fact that Carol testified that when she rubbed the juvenile's penis, he told her about ejaculation. Nor is discussion warranted on the juvenile's complaint about the timing or content of the judge's limiting instructions to the jury. See *Commonwealth* v. *Vieux,* 41 Mass. App. Ct. 526, 533 (1996), cert. denied, 520 U.S. 1245 (1997); *Commonwealth* v. *Lamontagne,* 42 Mass. App. Ct. 213, 220 (1997); *Commonwealth* v. *Lorenzetti,* 48 Mass. App. Ct. 37, 39-40 (1999).

4. *Admissibility of rebuttal testimony.* After the juvenile rested his defense, the Commonwealth asked to present a rebuttal witness to testify about interviewing techniques and patterns of behavior of sexually abused children. The prosecutor represented that the testimony of Susanne Meyer, a licensed clinical social worker, was relevant and necessary to refute the juvenile's evidence concerning Carol's sexual behavior and to speak to recognized techniques of interviewing sexually abused children. The judge allowed the Commonwealth's request.

In contending that this ruling gave rise to reversible error, the juvenile makes two arguments. He claims that Meyer vouched for Carol's credibility by comparing her behavior to the general behavior and disclosure characteristics of sexually abused children, see *Commonwealth* v. *Federico,* 425 Mass. 844, 849 (1997), and that her testimony was improper rebuttal because it did no more than support the Commonwealth's case-in-chief. See *Drake* v. *Goodman,* 386 Mass. 88, 92 (1982).

Meyer's testimony was general in nature. She testified that she had never met Carol nor reviewed any reports prepared in connection with the case. Her testimony concerning the various phases of an abusive relationship as well as certain factors that can lead a child to disclose the existence of such a relationship made no reference to the present case. Indeed, in some instances her testimony about the behavior of sexually abused children was at odds with the Commonwealth's evidence.[6] As stated in *Commonwealth* v. *Colon,* 49 Mass. App. Ct. 289, 291 (2000):

---

[6]For example, Meyer testified that disclosure can take place "progressively" over time, that "[i]t might start with a vague puzzling statement," that

> "It is settled that expert testimony on the typical symptoms or signs and general behavioral characteristics of sexually abused children is admissible and does not, of itself, constitute an opinion on the credibility of the complaining witness. See *Commonwealth* v. *Richardson*, 423 Mass. 180, 185-186 (1996); *Commonwealth* v. *Federico*, 425 Mass. 844, 847-849 (1997)."

We conclude that Meyer's testimony fell far short of crossing over the delicate line most recently analyzed in *Commonwealth* v. *Deloney, ante* 47 (2003).

Our conclusion, that Meyer's testimony did not touch upon the credibility of any witness, requires that we next consider whether the judge erred in allowing Meyer to testify. The juvenile argues that her testimony was improper rebuttal in that it did not respond to his case-in-chief. For purposes of decision only, we will assume that the Commonwealth had no *right* of rebuttal. See *Drake* v. *Goodman*, 386 Mass. at 92 ("[t]here is no right to present rebuttal evidence that only supports a party's affirmative case"). This assumption leads to the question whether the judge abused her discretion in allowing Meyer to testify. *Ibid.*

We think that the judge was well within his discretion in allowing Meyer to testify in rebuttal. Our conclusion is based upon the broad range of discretion granted trial judges on this issue rather than any rejection of the juvenile's claim that the Commonwealth had no right of rebuttal. See *Commonwealth* v. *Johnson*, 54 Mass. App. Ct. 224, 233 (2002), quoting from *Commonwealth* v. *Guidry*, 22 Mass. App. Ct. 907, 909 (1986) ("[r]ebuttal is legitimate when it responds to the opponent's case . . . at any rate, the judge, as the controller of the trial, has a nearly unreversible discretion to allow it"). Compare *Drake* v.

---

a child might later deny what had occurred, that an abused child might experience sleep disturbances, and that sexually abused children could manifest some, all, or none of these traits. Meyer also testified about behavior and characteristics of sexually abused children not shown by Carol. For example, there was nothing to show that Carol went through a "suppression" phase of the disclosure process, or that she refrained from telling of her abuse because she worried that she would not be believed or because she thought that she had done something wrong.

*Goodman,* 386 Mass. at 91-94 (judge did not abuse her discretion in refusing to allow rebuttal evidence that would have introduced a new theory of causation).

In reaching this conclusion, we have in mind the fact that the juvenile offered evidence to show sexualized behavior by Carol and that Janet allegedly admitted that Carol "had a problem with boys." That being so, we think it more than appropriate that the Commonwealth was allowed to present expert evidence to establish that victims of sexual abuse sometimes demonstrate a heightened awareness of sexual activity or behave in a sexually inappropriate manner.

*Adjudications affirmed.*