NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1167

COMMONWEALTH

vs.

FLORANGEL CASTRO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of assault and battery as a lesser included offense of the charged crime of assault and battery by means of a dangerous weapon.  On appeal, the defendant argues that the judge erred in admitting at trial (1) an eleven second audiovisual recording of the altercation and (2) the victim's testimony regarding the defendant's brother's arrest. Discerning no error in the admission of this evidence, we affirm.

Background.  1.  The Commonwealth's case.  On the afternoon of June 20, 2021, the victim and her boyfriend got in an altercation in their apartment, causing the victim's daughter to

call the police.  The police arrived, arrested the boyfriend, and removed him from the apartment, leaving the victim alone with her two daughters.  About twenty minutes later, the defendant entered the back door of the apartment, along with three of her children, demanding that the victim "[g]et the F out of her house."[1]  The victim said that it was her house and that the defendant should get out.  The defendant said, "This is why my brother doesn't like you," and punched the victim in the face.[2]

The defendant and the victim then got in a physical fight with their children looking on, screaming and crying.  As the women "tussled" their way out the back door, the defendant grabbed a porcelain pumpkin from the entryway and hit the victim in the head with it, slicing the victim's arms with the broken shards.  The victim then tripped and fell to the ground outside. The defendant got on top of the victim, who yelled for her daughter to call 911.  The victim eventually got out from underneath the defendant, police and fire personnel arrived, and the victim was taken to the hospital.

---

[1] The apartment was leased to the defendant's mother, who ordinarily lived there but was out of country at the time.

[2] The defendant's brother was the victim's boyfriend.

2

2. The defendant's case. The defendant put forward a self-defense theory through the testimony of her thirteen year old daughter and herself.

According to the defendant, she learned about a problem between her brother and the victim and then, on her mother's instructions to check on the situation, she entered the victim's apartment unannounced. An argument ensued, after which the victim grabbed the defendant by the neck. The defendant freed herself and tried to leave, but the victim went outside and held the door, trapping the defendant inside. As the defendant tried to get through the door, the victim began throwing things, including ice skates, at the defendant. The defendant was eventually able to push her way out, causing the victim to fall. The defendant then got on top of the victim in order to calm her down.

Although the defendant admitted that she might have grabbed a ceramic pumpkin during the struggle, she denied hitting the victim with it. She could not recall having punched the victim while inside and denied having punched, kicked, or hit the victim outside.

Discussion. 1. Eleven second audiovisual recording. At trial, the Commonwealth played an eleven second audiovisual recording (recording), depicting the altercation that spilled

3

out of the apartment.  The defendant had agreed to admission of the recording but objected to admission of the audio from the recording on the ground that "[w]e don't know who's talking or what's going on" and because it was made without the permission of the people who were recorded and so amounted to a possible wiretap violation.  The judge overruled these objections and admitted the recording with both the video and audio components.  On appeal, the defendant argues that the entire recording should have been excluded.[3]

We review a trial judge's evidentiary rulings for an abuse of discretion, such that we will not disturb the judge's decision absent a clear error of judgment in weighing the relevant factors.  See Commonwealth v. Ng, 491 Mass. 247, 257 (2023).  In general, relevant evidence is admissible.  See Commonwealth v. Correia, 492 Mass. 220, 227-228 (2023); Mass. G. Evid. § 402 (2025).  But relevant evidence may be excluded if its probative value is substantially outweighed by certain dangers, including unfair prejudice, confusion of issues,

---

[3] The parties agree that the defendant's claim as to admission of the video portion of the recording was not preserved but dispute whether the claim as to the audio was preserved.  Whether reviewed for prejudicial error for a preserved claim or substantial risk of miscarriage of justice for an unpreserved claim, the outcome is the same as we conclude that there was no error.  See Commonwealth v. Upton U., 59 Mass. App. Ct. 252, 255 n.3 (2003) (no need to determine appropriate standard of review where there is no error).

misleading jury, consuming time unnecessarily, or presenting cumulative evidence.  See Commonwealth v. Spencer, 465 Mass. 32, 48 (2013); Mass. G. Evid. § 403 (2025).

Here, there is no claim that the recording depicting the crime was irrelevant; rather the claim is that the probative value of the recording was weak and was substantially outweighed by (1) the fact that it was unnecessarily cumulative of other video recordings already admitted in evidence, (2) its tendency to mislead because it showed only the end of the entire event and (3) unfair prejudice caused by its "emotionally charged" and "highly inflammatory" nature.  We do not agree.

First, although the recording was cumulative of some of the evidence at trial, including surveillance footage taken from a distance, it depicted a more close-up view of the events that took place outside the house than the other video evidence did. Contrast Commonwealth v. Adams, 495 Mass. 600, 605 (2025). Second, while the recording only documented the end of the altercation, no one disputed the fact that it began inside, and the jury was unlikely to have been misled.  Contrast Commonwealth v. Mattei, 455 Mass. 840, 852 (2010).  Third, the recording showed an emotional scene, but we are not persuaded that it was "highly inflammatory," as the defendant suggests. See Commonwealth v. Bell, 473 Mass. 131, 142-145 (2015).

5

Compare Commonwealth v. Huang, 489 Mass. 162, 175 (2022), quoting Commonwealth v. Vasquez, 419 Mass. 350, 354 (1995) ("gruesome" postmortem photographs of victim not inadmissible "solely because they . . . may have an inflammatory effect on the jury"), with Commonwealth v. Carey, 463 Mass. 378, 391 (2012) (video recording of nude woman being fatally strangled was "highly inflammatory").

On the other hand, the probative value of the recording was strong. Contrary to the defendant's claim, it did shed light on a key issue in the case -- whether the defendant was the first aggressor or acted in self-defense. Although the recording did not capture the beginning of the altercation and so did not show how the fight began, it did provide evidence the jury could use in determining whether the Commonwealth met its burden of disproving that the defendant was acting in self-defense when she fought with the victim outside the apartment. See Commonwealth v. Fayad F., 495 Mass. 266, 275-276 (2025) (where evidence raises question of self-defense, Commonwealth bears burden of disproving defendant acted in self-defense). Specifically, it was some evidence of whether the defendant reasonably believed that her safety was in danger, did everything reasonable to avoid combat, and used only that degree of force necessary to defend herself. See Commonwealth v. King,

460 Mass. 80, 83 (2011).  See also Commonwealth v. Jaime, 433 Mass. 575, 579 (2001) (fact that evidence goes to central issue weighs in favor of admission).

The recording also allowed the jury to assess the credibility of the witnesses by permitting them to compare the recording with witness testimony that, for example, the defendant "had [the victim] by her hair" and punched down at the victim, and that the victim kicked up at the defendant, and called for her daughter to get help.  See Commonwealth v. Emence, 47 Mass. App. Ct. 299, 301-302 (1999) (error to exclude evidence tending to corroborate witness testimony where credibility of critical importance).  The recording was highly probative.

Given the strong probative value of the recording, the judge was well within her discretion in determining that its probative value was not substantially outweighed by any danger of needless presentation of cumulative evidence, misleading the jury, or undue prejudice.[4]

---

[4] The defendant argues that the prejudice flowing from the recording was exacerbated by the admission into evidence of a still image from the recording, showing the defendant standing over the victim on the ground.  The exhibit, like the video portion of the recording, went in without objection.  As with the video portion of the recording, we discern no substantial risk of miscarriage of justice from the admission of the still image.

2.  Defendant's brother's arrest.  The defendant argues that the judge erred in admitting the victim's testimony that her boyfriend, the defendant's brother, was arrested shortly before the defendant confronted the victim in her home.  Where the issue was not preserved below,[5] our review is limited to whether there was any error, and if so, whether that error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999); Commonwealth v. Johnson, 102 Mass. App. Ct. 195, 202 (2023).

The defendant first contends that the evidence was not relevant to any issue in the case.  However, the earlier altercation between the victim and her boyfriend resulting in the defendant's brother's arrest and removal from the apartment (one that was leased to the defendant's mother), provided a motive and context for the crime which took place twenty minutes later.  See Commonwealth v. Mendes, 441 Mass. 459, 464-465 (2004) (motive evidence generally admissible and relevant to place crime in context).

_____

[5] The prosecutor mentioned the arrest in opening without objection.  Defense counsel did object when the victim mentioned the arrest in her direct testimony, but his stated purpose was to question the level of detail the victim would go into about the incident with the boyfriend.  The judge allowed the questioning to continue but invited counsel to "object as we go along."  Immediately thereafter, the prosecutor elicited testimony that the defendant was placed under arrested and taken away to the police station.  Defense counsel did not object.

8

The defendant argues, however, that the evidence could only be relevant to motive if the defendant knew about the arrest, and that there is no evidence that the defendant was aware of it. Whether or not the defendant was aware of her brother's arrest, there was abundant evidence that the defendant was aware of a "problem" between the victim and her boyfriend, serious enough that her brother called her about it and her mother, who was out of country, directed her to eject the victim from the apartment.

Even so, the defendant argues that the probative value of the arrest itself was substantially outweighed by its undue prejudicial effect on the defendant's case. She contends that the fact of the arrest had the tendency to "taint" her with "guilt by association," and to bolster the victim's credibility by suggesting police support of her claim. Arguably, the fact of the defendant's brother's arrest was no more prejudicial to the defendant than evidence of the earlier altercation, which was characterized as "domestic violence." Moreover, the Commonwealth's case was strong, particularly in light of contemporaneous audiovisual evidence of the crime in progress. Even if the fact of the arrest had been erroneously admitted, there is no serious doubt that the trial result would not have been different. See Commonwealth v. Desiderio, 491 Mass. 809,

9

815-816 (2023) (discussing factors to consider in substantial risk of miscarriage of justice review on unpreserved error).

Judgment affirmed.

By the Court (Neyman, Singh & Hand, JJ.[6]),

_Paul Little_

Clerk

Entered:  August 28, 2025.

---

[6] The panelists are listed in order of seniority.